Sidney P. SMALL and William Landesman, d/b/a Small & Landesman, Appellants,

v.

SELDOWS STATIONERY, Jack Belowitz, Irving Platt and Irwin Katz.

No. 79–1719.

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1980.
Decided March 21, 1980.

---

Manya L. Kamerling (argued), Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for appellants.

Marc J. Bressler (argued), Bressler & Blaustein, P.A., Metuchen, N. J., for appellees.

Before SEITZ, Chief Judge, and ADAMS and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This is an appeal from a final order of the district court granting summary judgment in favor of the defendants. The plaintiffs contend that their claim for a brokerage commission presented the district court with a genuine issue of material fact and that the grant of summary judgment was therefore improper.

### I.

In this diversity action arising under New Jersey law, the plaintiffs sued Seldows Stationery and its three owners for breach of an alleged brokerage contract.[1] The plain-

---

1. It is unclear why the plaintiffs joined Seldows Stationery as a defendant because the crux of their complaint is that the individual defendants breached an agreement to pay them for producing a buyer for the stationery business.

Unless otherwise noted, all further references to the defendants in this opinion will refer only to the individual defendants.

There is also some confusion as to the identity of the corporate entity involved. The plain-

tiffs assert that they entered into an oral agreement with the defendants to procure a buyer for Seldows Stationery on terms acceptable to the defendants. They contend that although they produced a ready, willing, and able purchaser, the defendants refused to consummate the sale. When the plaintiffs demanded a commission, the defendants denied the existence of a brokerage agreement and refused to pay. This suit followed.

The defendants filed a motion for summary judgment in the district court on the ground that the plaintiffs' claim was barred by N.J.Stat.Ann. § 25:1–9 (West 1940). That statute, insofar as applicable, provides:

> [N]o broker or real estate agent selling or exchanging real estate for or on account of the owner shall be entitled to any commission for such sale or exchange, unless his authority therefor is in writing, signed by the owner or his authorized agent . . . .

The plaintiffs admitted that they were licensed real estate brokers and that the alleged brokerage agreement with the defendants was not in writing. The district court held that the sale of a business, its assets, and a leasehold constituted the sale or exchange of real estate under § 25:1–9. It then concluded that assuming "an agreement existed between plaintiffs and defendants, it related to [the] sale of a business, its assets, good-will and leasehold." Therefore, the district court held that recovery of the commission by plaintiffs was precluded by § 25:1–9 and proceeded to

grant defendants' motion for summary judgment.[2]

On appeal, the plaintiffs do not contest the district court's conclusion that § 25:1–9 requires a written brokerage agreement when the proposed sale is of a business, including a lease. Instead, they contend that the transaction underlying the brokerage agreement was for the sale of the defendants' corporate stock only and did not include the sale of any interest in real estate.

## II.

Initially, it is important to identify our scope of review of an order granting a motion for summary judgment. Under Fed.R.Civ.P. 56(c), summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In addition, all inferences drawn from these evidentiary sources must be made in favor of the party opposing the motion. Keeping these precepts in mind, we now must examine the record to determine if the plaintiffs have raised any genuine issues of material fact that preclude the grant of summary judgment.

In reaching its conclusion that the transaction underlying the alleged brokerage agreement related to the sale of the entire stationery business, including its assets, goodwill, and leasehold, the district court relied primarily on plaintiffs' answer to two

tiffs apparently believed that Seldows Stationery was a corporation that was wholly owned by the defendants. However, it appears from the record that Seldows Stationery is not a corporation but merely the business name of Metuchen Stationers, Inc., a New Jersey corporation whose stock is owned by the defendants. If plaintiffs believe that an amendment of their summons and complaint is needed on remand, they of course may make an appropriate application in the district court.

**2.** Plaintiffs' complaint named as defendants Seldows Stationery and its sole owners Jack Belowitz, Irwin Katz, and Irving Platt. Belowitz and Katz, who had purchased Platt's inter-

est in Seldows Stationery after plaintiffs allegedly had procured a buyer for the business, filed a cross-claim against Platt seeking contribution from him in the event that plaintiffs succeeded on their claim. However, Platt never was served with either the complaint or the cross-claim. Therefore, in its order granting defendants' motion for summary judgment, the district court also dismissed the complaint and cross-claim against Platt for want of prosecution. None of the parties to this appeal have claimed that the dismissal of Platt constituted error, and our decision does not disturb this part of the district court's order.

interrogatories and on the deposition of one of plaintiffs' employees. It treated statements contained in these documents as admissions by the plaintiffs that their agreement with the defendants included the sale of a lease.

The district court placed great emphasis on the plaintiffs' answer to defendants' interrogatories 7 and 8, in which the plaintiffs described the transaction to which they allegedly brought the defendants and a purchaser to agreement:

> *Sale of stock* of the corporation owned by the 3 individual defendants *to the plaintiffs' purchaser's corporation and which purchaser corporation would cause the dissolution and liquidation of the seller corporation and a conveyance of all of the assets of the seller corporation to the purchaser corporation* under Section 334(b)(2) of the Internal Revenue Code and with the price of $475,000 payable with 29% cash and the balance in equal monthly installments over the remaining period of the lease for the subject premises, with interest at 6% per annum to be paid on each installment of purchase money notes, to be secured by a purchase money security agreement upon all of the assets of the business, and further *to be secured by the assignment and reassignment of the principal lease for the subject premises from the seller to the buyer*, to be held in escrow pending the payment of the purchase money notes *and the buyer to occupy the premises* during the period when the purchase money notes are outstanding, *under the terms of a sublease to be granted by the sellers as sublandlord and the purchasers as subtenant, . . . and further, that the purchaser pay $50.00 per month for the office space and $75.00 per month for warehouse space, and that the purchaser assume the obligations of the existing lease for the subject premises.* (emphasis supplied)

This description, concluded the district court, "clearly recite[d]" that the alleged transaction included:

> . . . assignment and reassignment of the principal lease . . . arrangements for a sublease . . . assumption of the lease and sublease . . . and that the purchaser pay $50 per month for the office space and $75 per month for warehouse space, and that the purchaser assume the obligations of the existing lease for the subject premises.

The second document relied upon by the district court was the deposition of Sol Levy, one of plaintiffs' salesmen who was directly involved in the deal. Levy stated that the plaintiffs had obtained a listing for the stationery business that included "income, price, rent, hours, days open, things of that nature."

The plaintiffs dispute the district court's interpretation of the above quoted material. They argue that the sale arranged by them was not of the defendants' business assets, including a leasehold. Instead, they assert, as stated by plaintiff Landesman in his affidavit in opposition to defendants' motion for summary judgment, that "the entire sale was of shares of stock only." [3] Therefore, because stock is personal property, the plaintiffs argue that § 25:1–9 is inapplicable to their agreement.

The plaintiffs contend that the answer to interrogatories 7 and 8 supports their position because it speaks in terms of a sale of the defendants' stock. They argue that the district court, by focusing solely on references to a lease in the answer to these interrogatories, misperceived the true nature of the transaction and ignored the language (italicized above) indicating that the focus of the transaction was the sale of the defendants' stock and that the lease assignment was used only to secure the purchase price of the stock.

The district court dismissed plaintiffs' version of the sale, finding the sale of the

---

**3.** Although the defendants argue that Landesman's statement is inconsistent with the plaintiffs' complaint, which states in paragraph 8 that plaintiffs were retained "to sell [the] stationery store business," the complaint also alleges in paragraph 22 that the agreement "to which the defendants were brought with plaintiff's purchaser provided for the sale by the individual defendants of their stock ownership in the defendant, SELDOWS STATIONERY."

stock merely a mechanism arranged by the defendants under which the sale of the business, assets, and leasehold of the stationery business could be accomplished with favorable tax consequences. However, in determining whether § 25:1–9 requires the brokerage agreement in this case to be in writing, we must focus not on the actions taken by the seller and purchaser to minimize the tax consequences of the transaction, but on what in fact was to be sold by the broker for or on account of the seller.

The purpose of § 25:1–9 is to protect owners of real estate from fraud and sharp practices by real estate brokers. *See Ellsworth Dobbs, Inc. v. Johnson*, 50 N.J. 528, 236 A.2d 843 (1967). Therefore, it is applicable only to brokerage agreements in which the broker arranges the sale or exchange of real estate for or on account of the owner. Here, plaintiffs have alleged that the sale arranged by them was the sale of the stock owned by the defendants. This transaction itself involves no sale of a lease because the lease remains in the name of the corporation both before and after the sale. Moreover, we do not think that actions taken by the purchaser to gain favorable tax treatment after the sale of the stock is completed are relevant in determining whether the sale arranged by the plaintiffs included the sale of real estate or merely the sale of stock.

Nor does the fact that the defendants and the purchaser contemplated the assignment of the lease as security for the purchase price of the stock convert a brokerage agreement for the sale of stock into an agreement covered by § 25:1–9. Although there are no New Jersey cases on point, the statute by its very terms applies only to brokerage agreements for the sale or exchange of real estate by the owner of the property—it does not refer to transfers from buyer to seller to secure purchase price. Therefore, we think that a New Jersey court would hold that § 25:1–9 does not apply to brokerage agreements under which the only transfer of real estate is from the buyer to the seller to secure the price of the property that is the subject matter of the agreement. Any other con-clusion would be inconsistent with the language and purpose of the statute.

We conclude that the plaintiffs have raised a genuine issue of material fact as to whether the alleged brokerage agreement at issue here was for the sale of the business, assets, and leasehold or whether it was for the sale of the defendants' stock. Therefore, we will reverse the district court's grant of defendants' motion for summary judgment and will remand the case to the district court.

### III.

We will reverse that part of the district court's order that granted defendants' motion for summary judgment and will remand the case to the district court for further proceedings consistent with this opinion.