**HANCOCK INDUSTRIES, et al.**

v.

**Erik J. SCHAEFFER, et al.**

**Civ. A. No. 85–3158.**

United States District Court,
E.D. Pennsylvania.

Dec. 9, 1985.

---

Nolan N. Atkinson, Jr., Philadelphia, Pa., for plaintiffs.

Joseph A. Tate, Stephen D. Brown, Alison M. Benders, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for J. Erik Schaeffer and Chester County Solid Waste Authority.

Francis P. Connors, County Sol., Michael J. Ehling, Asst. County Sol., Media, Pa., for Delaware County.

Michael F.X. Gillin, Halligan & Gillin, Media, Pa., for Victor Petaccio and Delaware County Incinerator (Solid Waste) Authority.

## MEMORANDUM OPINION AND ORDER

HUYETT, District Judge.

On July 5, 1985, following a hearing on plaintiffs' motion for preliminary injunction and argument on defendants' motions for summary judgment, I denied the preliminary injunction motion and granted summary judgment in favor of defendants as to plaintiffs' due process and antitrust claims. I granted plaintiffs thirty days to conduct discovery as to their equal protection claims. Presently pending before me are defendants J. Erik Schaeffer, Chester County Solid Waste Authority ("Authori-

ty") and Chester County's renewed motions for summary judgment as to plaintiffs' equal protection claim.

As I noted in my opinion of August 5, 1985, 619 F.Supp. 322, because there is no suspect classification involved and plaintiffs do not have a fundamental right to engage in their businesses, defendants must merely show that there is a rational relationship between the classification and a legitimate state interest. Both the Chester County Solid Waste Authority and the Delaware County Incinerator (Solid Waste) Authority have decided to limit the dumping at their respective landfills to the trash generated within the county with an exception for certain long-term contracts providing for the dumping of out-of-county trash; the classification created therefore is that consisting of out-of-county trash. The interests which defendants have identified are the interests of each county involved in providing for the disposal of trash generated within that county.

Under state law, *i.e.*, the Solid Waste Management Act, 35 P.S. § 6018.202(a), each county is required to provide for the collection, transportation, processing and disposal of municipal waste generated within its boundaries. Plaintiffs, apparently, do not dispute that the proper disposal of county trash is a legitimate state interest. Rather, they dispute the conclusion that the Authority's actions were rationally related to that interest.

Defendants contend that the closure of the Lanchester Landfill to out-of-county trash is rationally related to the interest in maintaining an available means of providing for the disposal of in-county trash. In support of their respective motions for summary judgment, defendants contend that there are no material issues of fact which would preclude entry of judgment as a matter of law pursuant to Fed.R.Civ.P. 56.

Summary judgment may only be granted when it has been established that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Small v. Seldows Stationery*, 617 F.2d 992 (3d Cir.1980). The court does not decide issues of fact, but merely determines if there is an issue of fact to be tried. *Ettinger v. Johnson*, 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the non-moving party and any reasonable doubt as to the existence of a genuine issue of fact is to be resolved against the moving parties. *Continental Ins. Co. v. Brodie*, 682 F.2d 436 (3d Cir. 1982).

■ In response to defendants' renewed motions for summary judgment, plaintiffs contend that there are a number of material factual issues in dispute which preclude the entry of judgment at this time.[1] I will address each of plaintiffs' contentions *in seriatim*. First, plaintiffs contend that certain documentary evidence contradicts the testimony of two defense witnesses to the effect that the Chester Authority acted independently of both Chester County and the Delaware County defendants in deciding to close the Lanchester Landfill to out-of-county trash. Plaintiffs refer to a confidential memorandum dated April 25, 1985 from Chester County Bureau of Environmental Health and Protection Director, David A. Jackson and Chester County Solid Waste Coordinator, Carole A. Rubley to Larry Boling, Chairman of the Authority with a carbon copy to defendant Eric Schaeffer, in which they noted that Delaware County's Colebrookdale Landfill was to be closed to out-of-county trash and then suggested that the Chester Authority consider taking the same steps. Plaintiffs contend that this memorandum reflects the fact that Mr. Schaeffer knew of Delaware

---

**1.** One issue which plaintiffs have not raised in response to the renewed motions for summary judgment is the disposal at the Lanchester Landfill of asbestos from outside the county. I believe that the continued acceptance of such high-priced, low-volume items at the Landfill does not violate the equal protection clause. Again, the acceptance of these items is rationally related to the need to reduce the volume of dumping while at the same time maintaining sufficient income to make timely payments on the outstanding bonds.

County's plans despite his testimony to the contrary. I do not believe that this factual dispute is at all material to the legal issue raised by the motions for summary judgment which is whether the classification created by defendants is rationally related to their legitimate interest in providing for the disposal of in-county trash. Moreover, I am not sure the discrepancy of plaintiffs suggest is that great if it exists at all. Despite the fact that they attached it to their complaint, plaintiffs ignore a memorandum dated March 29, 1985 from Mr. Schaeffer to all haulers in which Mr. Schaeffer stated that there was a possibility that due to high waste volume, out-of county trash would not be accepted after June 30, 1985. Therefore, Mr. Schaeffer and undoubtedly members of the Authority were actively considering geographic restrictions at least a month before the confidential memorandum was sent.

Plaintiffs also contend that the testimony of defense witnesses Boling and Schaeffer was misleading as to the actual tonnage figures. While it is true that the average daily tonnages in December did not rise to 3,000, it is true that on ten days that month the daily tonnages exceeded 2,500 tons. More important for purposes of the present analysis, is that the monthly tonnage increased 34% in December from the September 1984 tonnage and by May, 1985, the monthly tonnage had increased 101% from the September tonnage. Clearly, the tonnage during this period nearly doubled; it is not material to the present analysis whether this occurred in December, March or May. It was entirely reasonable that as the volume started to increase, Landfill management, particularly Mr. Schaeffer, grew concerned about the Landfill's capacity to handle adequately the increased volume and started to look into means by which to maintain the Landfill at a reasonable dumping volume. By May, when the Authority officially adopted the Schaeffer proposal that dumping be restricted to in-county trash, the volume had reached a daily average of 3,150 tons.

Plaintiffs also contend that the tonnage figures presented at the July 5th hearing are misleading because the Authority had previously made representations to potential investors that the equipment at the Lanchester Landfill was capable of handling 3,000 tons per day. As defendants note, however, the equipment is only one element to be taken into consideration; manpower, compaction time and the ability to control litter are other elements which the Landfill management are in the best position to consider in determining the optimal dumping rate. Moreover, the important consideration for the present analysis is whether the Authority's actions were rationally related to its interest in providing for the disposal of in-county trash. The fact that the daily dumping had doubled and therefore necessarily shortened the life expectancy of the Landfill supports the Authority's conclusion that it had to act to prolong the life of the Landfill to best serve the interests of Chester County residents in the safe disposal of trash generated within the county. Therefore, I do not find merit in plaintiffs' contention that there is a material issue as to the volume the Landfill could handle such that precludes the entry of judgment.

Similarly, plaintiffs' contention that because there was no reference in the Authority's meeting minutes to discussions about environmental hazards and maintenance concerns, they did not exist. Both Boling, Chairman of the Authority, and Schaeffer, Executive Manager of the Landfill, testified that they were concerned about the increased dumping by the end of 1984. I do not find it as unreasonable or surprising as plaintiffs evidently do that the concerns were not reflected in the minutes of the formal meetings prior to the taking of action by the Authority. I certainly do not believe that the absence of such discussion on the record has any bearing on the present issue which is again whether there was a rational relationship between the action finally taken by the Authority and the interest in providing for disposition of in-county trash.

Plaintiffs also contend that there is some dispute about whether the Landfill's life

expectancy was fifteen or eighteen years and whether there were other steps which could be taken by the Authority to lengthen the Landfill's life. With respect to the fifteen years or eighteen year conflict I do not believe that this is a material dispute. Second, in support of their contention that other steps could be taken to lengthen the life of the Landfill, plaintiffs cite a report dated May 31, 1985 from the Chester Authority in which the engineers noted that in addition to other steps, the Authority could extend the Landfill life by applying for a permit to use additional property within the existing property. The engineers also noted, however, that the Authority was taking steps to restrict the use of the Landfill and would continue to do so when two long-term contracts expire. The fact that the Authority could apply for the permit or had decided not to renew to long-term contracts in 1987 is immaterial to the present action.

Plaintiffs further argue that the 400 tons per day which they were dumping was insignificant given the total picture and therefore their dumping would have little bearing on the life expectancy of the Landfill. Again, I do not believe it is appropriate for me or for the plaintiffs to second guess decisions made by defendants so long as they are rationally related to the stated interest which I believe they are. Similarly, I do not believe it appropriate for me or plaintiffs to question the imposition of minimum weekly tonnage requirements. As defendants note, the minimum tonnage requirements are merely a tool by which the Landfill controls the flow of trash into the facility; it has no bearing on the total amount of trash received and is immaterial to the issue presently before me.

Because I do not find that plaintiffs have established the existence of any genuine issue of material fact, judgment may be entered in favor of defendants if the classification they have created is rationally related to the interest in the proper disposal of in-county trash. In *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976), the Court held that a distinction between in-state and out-of-state scrap processors did not violate the equal protection clause because the distinction bore a rational relationship to the state interest in using its limited funds to clean up its environment. Similarly, the distinction between in-county and out-of-county trash drawn by the Authority bears a rational relationship to the statutory obligation imposed on the county to provide for adequate and safe disposition of solid waste generated within Chester County. It is reasonable for defendants to assume that closing the Landfill to out-of-county trash will enable the county to lengthen the life of the Landfill to serve the interest of the county residents and will enable the Authority to protect the environment and prevent health and safety hazards. Accordingly, I conclude that the Chester County defendants are entitled to judgment as a matter of law as to plaintiffs' equal protection claim and I will therefore grant their motions for summary judgment.