SMITHKLINE BEECHAM
CORPORATION,
Plaintiff,

v.

ROHM AND HAAS COMPANY,
Defendants.

Civ. A. No. 92–5394.

United States District Court,
E.D. Pennsylvania.

June 6, 1994.

Philip J. Katauskas, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Rohm and Haas Co.

Frank M. Thomas, Jr., Morgan, Lewis & Bockius, Philadelphia, PA, for Buckeye Pipe Line Co.

## MEMORANDUM

YOHN, District Judge.

This is an action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.* Plaintiff, SmithKline Beecham ("SKB") and defendant, Rohm and Haas Company ("R & H"), entered into a consent decree with the United States in which both parties agreed to jointly undertake at their own expense to clean up an environmentally contaminated site. Both companies owned and operated, at different times, Whitmoyer Laboratories—the business that caused the site to become contaminated.

After entering into the consent decree, SKB sued R & H on two counts. In count I of its complaint, SKB seeks a judicial allocation of the two parties' clean up responsibilities under CERCLA. In count II, SKB asserts a contractual indemnification claim for part of the clean up based on an indemnification clause of the purchase agreement in which Beecham, a predecessor of SKB,[1] purchased Whitmoyer Laboratories from R & H.

R & H has filed a motion for partial summary judgment on count II only. SKB has also filed a motion for partial summary judgment. It seeks summary judgment on counts I and II on the issue of liability only, not damages. For the reasons discussed below, the court will deny R & H's motion for partial summary judgment and grant SKB's motion for partial summary judgment, in part.

## I. BACKGROUND

Each party has submitted lengthy recitations of the facts. The facts relevant to the present inquiry, however, are not in dispute.

David P. Bruton, Bonnie Allyn Barnett, Drinker, Biddle & Reath, Philadelphia, PA, for SmithKline Beecham Corp.

1. For convenience and to avoid confusion, the court will refer to both Beecham and SmithKline Beecham as "SKB".

From the mid 1950's to 1964, the original Whitmoyer Laboratories manufactured animal health products which contained arsenic at its plant in Myerstown, Pennsylvania. During this time period, Whitmoyer disposed of large quantities of hazardous waste containing arsenic on the grounds of the plant. In 1964, R & H purchased Whitmoyer Laboratories and operated it under the corporate entity, Whitmoyer Laboratories, Inc. During R & H's ownership of the business from 1964 to 1978, arsenic waste continued to be released into the environment at the Myerstown site. (Def.'s Ans., ¶¶ 10–11, 23).

In 1978, R & H sold all the Whitmoyer Laboratories, Inc. stock to SKB. The 1978 Agreement of Purchase and Sale (the "purchase agreement"), through which SKB purchased all of the stock in Whitmoyer, contained an indemnification clause in which R & H indemnified SKB against "[a]ll material liabilities relating to the conduct of the Business prior to the First Closing Date." [2] Conversely, SKB agreed to indemnify R & H for all losses and liabilities "resulting from the operation of the Business by Buyer after the First Closing Date." (Pl.'s Ex. 48 at 7–11).

During SKB's ownership of Whitmoyer Laboratories from 1978 to 1982, additional toxic waste was released into the environment at the Myerstown site. (Pl.'s Mem. at 7). In 1982, SKB sold its interest in Whitmoyer to Stafford Laboratories, Inc., a company that has since filed for bankruptcy and which has not been named as a party in this action.

Congress enacted CERCLA in 1980. The site of the Whitmoyer plant in Myerstown was placed on the Superfund National Priorities List in June, 1986, pursuant to section 105 of CERCLA. 42 U.S.C. § 9605. R & H and SKB were found to be "Potentially Responsible Parties" ("PRP's") under CERCLA with respect to the Whitmoyer site.[3] On September 6, 1992, the United States government settled its CERCLA liability claims against SKB and R & H by entering into a consent decree in which R & H and SKB agreed to design and implement the clean up of contamination at the Whitmoyer site and to be jointly and severally liable for that obligation. (Def.'s Ex. C). SKB has filed this suit for a judicial determination of clean up costs between the parties and for enforcement of the indemnity clause against R & H for the clean up of pre-sale contamination.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322–32, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Any issue of material fact is genuine if the evidence could cause a reasonable jury to decide in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must take the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. Small v. Seldows Stationery, 617 F.2d 992, 994 (3d Cir.1980).

---

**2.** Section 3.4 of the agreement defines the term "material" by stating that "[f]or purposes of Subsection[ ] 3.2(a) ... all claims for which indemnification could have been claimed thereunder except for the application of the de minimis provisions ..., results in any losses, liabilities, damages or deficiencies of $50,000 or more." (Pl.'s Ex. 48 at 11).

**3.** In order for a person to be liable under CERCLA, it must be proven that:
(1) the defendant falls within one of the four categories of "responsible parties";
(2) the hazardous substances are disposed at a "facility";

(3) there is a "release" or threatened release of hazardous substances from the facility into the environment;
(4) the release causes the incurrence of "response costs".
United States v. Alcan Aluminum Corp., 964 F.2d 252, 258–59 (3d Cir.1992) (footnotes omitted) (citing 42 U.S.C. § 9607). One of the categories of persons which CERCLA designates as "responsible parties" is "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2).

## A. Count I

In count I of its complaint, SKB seeks a judicial allocation of the parties' responsibilities for clean up costs under the liability and contribution provisions of CERCLA. 42 U.S.C. §§ 9607(a) and 9613(f). SKB moved for partial summary judgment, seeking a judicial declaration that R & H is liable to SKB under CERCLA. R & H has since acknowledged its liability under CERCLA for its equitable share of the clean up costs at the Myerstown site. (Def.'s Opp'n Mem. at 1). The court, therefore, will grant SKB's motion for partial summary judgment on Count I to the extent that R & H is liable under CERCLA for its equitable share of the clean up costs.

## B. Count II

In count II of its complaint, SKB asserts a contractual indemnification claim for part of the clean up based on an indemnification clause of the purchase agreement. R & H seeks summary judgment on count II, claiming that it did not indemnify SKB for its CERCLA liability as a matter of law. SKB has filed for partial summary judgment on count II, seeking a judicial declaration that it is indemnified by R & H under the agreement for the portion of its CERCLA liabilities caused by the conduct at Whitmoyer Laboratories before SKB bought it from R & H.

### 1. Can CERCLA liability be indemnified?

■ The first issue which must be addressed is whether a party may be indemnified for its CERCLA liability. Section 107(e)(1) of CERCLA states the following:

No indemnification, hold harmless, or similar agreement or conveyance shall be ef-

fective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1). Courts have interpreted this section of the statute as allowing parties to shift among themselves the responsibilities for response costs, but prohibiting a party from escaping its underlying liability to the United States government or another third party. *See Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 14 (2d Cir.1993); *John S. Boyd Co. v. Boston Gas Co.,* 992 F.2d 401, 405 (1st Cir.1993); *Purolator Products Corp. v. Allied–Signal, Inc.,* 772 F.Supp. 124, 129 (W.D.N.Y.1991); *Mobay Corp. v. Allied–Signal, Inc.,* 761 F.Supp. 345, 355 (D.N.J.1991); *Southland Corp. v. Ashland Oil, Inc.,* 696 F.Supp. 994, 1000 (D.N.J. 1988); *Chemical Waste Management, Inc. v. Armstrong World Indus., Inc.,* 669 F.Supp. 1285, 1294–95 (E.D.Pa.1987). *But see Harley–Davidson, Inc. v. Minstar, Inc.,* 837 F.Supp. 978 (E.D.Wis.1993) (interpreting section 9607(e) as prohibition against contractual transfer of CERCLA liability between parties). Under this section, then, responsible parties may allocate response costs among themselves while remaining jointly and severally liable to the government for the entire clean up. A contractual indemnification clause, therefore, may be applied to CERCLA liability.

■ R & H argues that SKB may not seek indemnification because it was not without fault. Under New Jersey law,[4] a party seeking common law indemnification from

---

4. The sale agreement stipulates, and the parties agree, that New Jersey law applies to the indemnification provision at issue in this case. Most courts confronting issues of indemnification of CERCLA liabilities apply state substantive law, unless the state law is hostile to the federal interests represented in CERCLA. *See, e.g., Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 14–15 (2d Cir.1993); *John S. Boyd Co. v. Boston Gas Co.,* 992 F.2d 401, 406 (1st Cir.1993); *United States v. Hardage,* 985 F.2d 1427, 1433 (10th Cir.1993); *Mardan Corp. v. C.G.C. Music,* 804 F.2d 1454, 1457 (9th Cir.1986). *But see Mobay*

*Corp. v. Allied–Signal, Inc.,* 761 F.Supp. 345, 352 (D.N.J.1991) (federal common law governs interpretation of contract releasing party of CERCLA liability). The substantive law of New Jersey is not hostile to CERCLA policies. Therefore, the indemnification agreement will be examined under New Jersey substantive law. It should be noted that the interpretation of the contract would be essentially identical under the federal common law which incorporates state law principles of contract interpretation. *See Olin Corp.,* 5 F.3d at 14.

another must be without fault. *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 N.J. 55, 159 A.2d 97 (1960). This requirement is inapplicable to the present case for two reasons. First, SKB does not seek common law indemnification, but contractual indemnification. Under New Jersey law, parties to a contract can allocate the burden of risk as to potential tort liability in any manner they choose as long as the intent to reallocate that risk is clearly expressed in the contract. If the indemnification clause is ambiguous, then the clause must be strictly construed against the indemnitee. *Ramos v. Browning Ferris Industries, Inc.*, 103 N.J. 177, 191, 510 A.2d 1152 (1986).

Furthermore, even though SKB's CERCLA liability is triggered by its own disposals, it seeks indemnity only for those liabilities for which it is "without fault"—the liabilities related to the acts of prior owners of the Myerstown site. Therefore, even under the common law indemnification standard, SKB would not be prohibited from seeking indemnification. *See Bowen Eng'g v. Estate of Reeve*, 799 F.Supp. 467, 483–85 (D.N.J.1992) (CERCLA liability may be indemnified under New Jersey's common law indemnification standard).

### 2. Does the indemnification clause apply to CERCLA liability?

■■■ Having established that private parties may be indemnified for CERCLA liability, the court must determine whether the purchase agreement at issue actually indemnified SKB for any of its CERCLA liability. The court will examine the agreement under New Jersey's principles of contract interpretation.[5] The object of any contract interpretation is to determine the intent of the parties. *Communications Workers of Am., Local 1087 v. Monmouth County Bd. of Social Servs.*, 96 N.J. 442, 476 A.2d 777, 781 (1984). A court interpreting a contract under New Jersey law must "look to the objective intent manifested in the language of the contract in light of the circumstances surrounding the transaction." *Dome Petroleum v. Employers Mut. Liab. Ins. Co.*, 767 F.2d 43, 47 (3d Cir.1985). Under New Jersey law, indemnification clauses require a clear and unambiguous intent to indemnify. If the indemnification clause is ambiguous, then it must be strictly construed against the indemnitee. *Ramos* 103 N.J. at 191, 510 A.2d 1152. This court, therefore, must examine the language of the agreement between the parties in light of the surrounding circumstances to ascertain whether the indemnification clause clearly and unambiguously expresses the intent of the parties to indemnify.

All of the indemnification clauses within the purchase agreement between SKB and R & H are located in section 3, titled "Allocation of Liability/Indemnification." This section uses broad language with specific exceptions to allocate between R & H and SKB all present and future liabilities arising from the sale of the Business. In section 3.3(a) of the agreement, SKB indemnifies R & H for "[a]ll losses, liabilities, damages or deficiencies to Seller resulting from the operation of the Business by Buyer *after* the First Closing Date." Pl.'s Ex. 48 at 10–11 (emphasis added). Conversely, under section 3.2(a) R & H indemnifies SKB for "[a]ll material liabilities relating to the conduct of the Business *prior to* the First Closing Date (regardless when the related claim may be asserted), whether accrued, absolute, contingent or otherwise, which are not assumed by Buyer under Subsection 3.1."[6] *Id.* at 8 (emphasis added). The indemnification language of the contract is extremely broad in that it allocates every possible liability that exists or might arise relating to the "conduct of the Business." The term "liability" has an extremely expansive meaning. Black's Law Dictionary states that the term "has been referred to as of the

**5.** Contract interpretation is a question of law in New Jersey. *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 767 F.2d 43, 46 (3d Cir. 1985); *Kyreakakis v. Paternoster*, 732 F.Supp. 1287, 1290 n. 3 (D.N.J.1990).

**6.** Section 3.1 allocates to SKB several specifically enumerated liabilities of the business. These liabilities consist of liabilities for continuing operations (trade accounts payable, normal accrued liabilities and net intercompany trade liabilities) and other discreet liabilities listed in separate exhibits to the contract. (*See* Pl.'s Ex. 48 at 7–8). None of these specific liabilities can be read to include the cost of cleaning up the existing pollution at the Myerstown site.

most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent or likely." *Black's Law Dictionary* 914 (6th ed. 1990) (citations omitted). The parties established an explicit dividing line at the date of the sale, making each party responsible for all liabilities according to that date. Instead of limiting the indemnification clauses to specifically enumerated claims, the parties took into account all unanticipated future claims by adopting broad language. The broad language of the "Allocation of Liability/Indemnification" section of the agreement expresses the parties' intent to allocate every possible present and future liability.

 In order for parties to allocate CERCLA liability between themselves, they must do so expressly in a written agreement. *Mobay Corp. v. Allied–Signal, Inc.*, 761 F.Supp. 345, 357–58 (D.N.J.1991); *Chemical Waste Management, Inc. v. Armstrong World Indus., Inc.*, 669 F.Supp. 1285, 1295 (E.D.Pa.1987). In this case, however, it would have been impossible for R & H and SKB to expressly agree to allocate CERCLA liability because they signed the purchase agreement two years before Congress passed CERCLA. However, agreements entered into prior to CERCLA's enactment may nonetheless allocate CERCLA liability. *See, e.g., Olin*, 5 F.3d at 14; *Mobay*, 761 F.Supp. at 358; *Hatco Corp. v. W.R. Grace & Co.–Conn.*, 801 F.Supp. 1309, 1317–18 (D.N.J. 1992). If a pre-CERCLA agreement clearly expresses the parties' intent to allocate all present and future liabilities among themselves, then that agreement includes the allocation of CERCLA liabilities even if the agreement has no specific references to environmental liability. *Purolator Products*, 772 F.Supp. at 130 (citing *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir. 1986), *Mobay Corp. v. Allied–Signal, Inc.*, 761 F.Supp. 345 (D.N.J.1991), *Rodenbeck v. Marathon Petroleum Co.*, 742 F.Supp. 1448 (N.D.Ind.1990), *FMC Corp. v. Northern Pump Co.*, 668 F.Supp. 1285 (D.Minn.1987)).

Several courts have applied this principle to determine whether a pre-CERCLA indemnification agreement encompassed CERCLA liability. In *Olin Corp. v. Consoli-*

*dated Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993), a buyer indemnified a seller against "all liabilities ... of [seller] related [to the purchased business] ... as they exist on the closing date or arise thereafter." *Id.* at 15 (emphasis deleted). The court held that this broad indemnity language demonstrated the parties' "clear and unmistakable intent" that the buyer indemnify the seller for all liabilities, including future unknown liabilities such as CERCLA. *Id.* at 16.

In *Purolator Products Corp. v. Allied–Signal, Inc.*, 772 F.Supp. 124 (W.D.N.Y. 1991), a buyer indemnified a seller for all existing claims and agreed to take the purchased assets with any liabilities that may attach to them in the future. *Id.* at 131. The court held that because the agreement was broad enough to include all possible claims, CERCLA claims must be included among the future unknown liabilities for which the buyer indemnified the seller. *Id.* at 132.

An example of a purchase agreement that did not contain a sufficiently broad allocation of risks to include CERCLA liability was discussed in *Hatco Corp. v. W.R. Grace & Co.–Conn.*, 801 F.Supp. 1309 (D.N.J.1992). In *Hatco*, a seller argued that under a pre-CERCLA purchase agreement the buyer released the seller from any future CERCLA claims that could be asserted against the seller. The court in *Hatco* held that the release clause of the purchase agreement at issue did not apply to the seller's future CERCLA liability because the provision did not allocate all liabilities. *Id.* at 1318. The court stated that a pre-CERCLA indemnity agreement would encompass CERCLA liability only if the agreement contained a broad waiver of all liability or if it contained language which specifically indemnifies one party for all "environmental-type" liabilities. *Id.* at 1317–18. Under the agreement, the buyer assumed only certain specified liabilities after purchasing the business. The agreement further stated that "[a]ll such liabilities ... not assumed by [buyer] are hereby retained by [seller]." *Id.* The court found that the agreement contained neither a broad waiver nor an indemnification of environmental-type liabilities of the seller. The agreement,

therefore, did not indemnify the seller's CERCLA liability.

In the present case, the indemnification section of the agreement is broad enough to include future CERCLA liability. The indemnification section clearly expresses the parties' intent to allocate between the two parties all present and future liabilities. Because the indemnification section allocates all future liabilities, CERCLA liability must be included among the future unknown liabilities which the parties allocated between themselves.

It is important to note that the present case differs from the prior case law in that here the seller is indemnifying the buyer for the liabilities caused by the seller. In *Purolator Products, Hatco* and *Olin*, the buyer indemnified the seller for liabilities that were caused by the seller. The holdings of these cases were based to a large degree upon the "public policy tending toward strict construction of any indemnity agreement under which one party agrees to indemnify another for the consequences of that other's own acts." *Hatco*, 801 F.Supp. at 1318. This strict interpretation standard is not applicable here because the indemnitee, SKB, is not being indemnified for the results of its own actions, but for the results caused by the actions of the Business before SKB purchased it. Even under this stricter standard, however, the indemnification provision of the purchase agreement between R & H and SKB encompasses CERCLA liability because it clearly and unambiguously expresses the parties' intent to allocate all possible present and future liabilities.

The defendant argues that the agreement is not broad enough because it does not allocate "all liabilities" to one party. (Def.'s Mem. at 18). In each of the cases cited by both plaintiff and defendant in which the court found an indemnification broad enough to include CERCLA liability, one party indemnified the other party for all claims and liabilities both present and future. *See Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10 (2d Cir.1993); *Purolator Products Corp. v. Allied–Signal, Inc.*, 772 F.Supp. 124 (W.D.N.Y.1991). The agreement at issue splits the indemnification based on whether the liability relates to pre-sale conduct or post-sale conduct and also makes certain specific exceptions. R & H argues that because the agreement does not provide indemnification for "all liabilities of any type whatsoever," it is not broad enough to encompass CERCLA liability.

The defendant, however, misconstrues the case law. The focus in determining whether a pre-CERCLA indemnification agreement encompasses CERCLA liability is not whether one party indemnified the other for all possible liabilities, but whether the agreement clearly demonstrates the parties' intent to allocate all possible liabilities between themselves. The courts in the prior cases required broad indemnification language to ensure that the contract clearly and unequivocally expressed the parties' intent to allocate future unknown risks. Once it is determined that an agreement allocates all possible liabilities, then CERCLA must be included among those future possible liabilities. Although the indemnification clause at issue does not transfer all liability to one party, it is no less clear or unequivocal in its allocation of all future liabilities between the two parties. The agreement could not be clearer in its expression of the parties' intent to allocate future liabilities based on which party's conduct the liability relates to.

The contract at issue is very similar to the agreement discussed in *American Nat'l Can Co. v. Kerr Glass Mfg. Corp.*, 1990 WL 125368, 1990 U.S.Dist. LEXIS 10999 (N.D.Ill. August 20, 1990). The issue in that case was also whether a pre-CERCLA purchase agreement could indemnify a buyer for its CERCLA liabilities caused by the seller. Under the contract, the seller indemnified the buyer for all liabilities "arising out of facts or events occurring prior to" the sale of the business. *Id.* at *2, 1990 U.S.Dist. LEXIS, at *4. The court held that because the broad language of the indemnification clause encompassed all future claims, included among these future claims must be the buyer's CERCLA liability which arose out of the seller's activity prior to the sale of the business. *Id.* Similarly, the purchase agreement at issue has broad indemnification language which allocates all possible future lia-

bilities between the parties. CERCLA liability is among the unanticipated future liabilities which the parties allocated between themselves. The court finds, therefore, that the agreement included the allocation of CERCLA liability based on whether that liability related to pre-sale or post-sale conduct.

### 3. Did R & H indemnify SKB against CERCLA liability?

Even though the agreement allocates CERCLA liability between the parties, the plaintiff's CERCLA liability with respect to the clean up of the Myerstown site may not have been allocated to the defendant. Under section 3.2(a), R & H indemnified SKB only for those liabilities "relating to the conduct of the Business prior to the First Closing Date." The issue, then, is whether SKB's CERCLA liability relates to pre-sale or post-sale conduct.

R & H contends that KB's CERCLA liability is not indemnified under section 3.2(a) because it arose *after* the date of the sale when SKB first disposed of hazardous materials at the Whitmoyer site during its ownership of the Business. (Def.'s Mem. at 21–27). As a former owner of a contaminated site, SKB is liable under CERCLA only if contamination to the site occurred during its ownership of the site. *See* 42 U.S.C. § 9607(a)(2). R & H claims that SKB's CERCLA liability arose when it released arsenic waste into the environment at the Whitmoyer site. But for SKB's post-sale disposal of hazardous substances at the Whitmoyer site, R & H argues, SKB would not have had any CERCLA liability. Therefore, according to defendant's argument, SKB's CERCLA liability is not indemnified under the contract because it relates to post-sale conduct.

Essentially, the defendant interprets the agreement's phrase "all material liabilities relating to the conduct of the Business prior to the ... sale" as not applying to any liabilities that would not have arisen "but for" some post-sale conduct. This interpretation is flawed because it would preclude indemnification of SKB for *any* liability. Every possible liability related to Whitmoyer

Laboratories that attaches to SKB would have necessarily arisen out of SKB's "post-sale conduct" of owning the Business. "But for" that ownership, there would be no liability. This interpretation would then render the indemnification clause meaningless.

Other courts which have faced this same argument have held that the fact that CERCLA liability initially attached to the indemnitee because of its own actions did not mean that the liability could not also be related to the activities of the indemnitor. In *New York v. SCA Servs., Inc.,* 1994 WL 66931 (S.D.N.Y., Feb. 18, 1994), the court held that a waste generator which arranged for the disposal of hazardous waste could be indemnified for its CERCLA liability under an agreement with the transporter of the waste. The indemnification agreement stated that the generator was indemnified for any liabilities "in any way [ ] associated" with the activities of the transporter. *Id.* at *2. The court reasoned that although the generator's CERCLA liability arose out of the fact that it arranged for the disposal of its own hazardous substances, that liability was "associated" with the activities of the transporter and therefore within the scope of the indemnification clause. *Id.* Similarly, although SKB's CERCLA liability initially arose out its own disposal of hazardous substances during its ownership of Whitmoyer, the portion of that liability attributable to the conduct of the Business prior to its purchase falls within the scope of the indemnification clause of the purchase agreement. Similarly, in *American Nat'l Can Co. v. Kerr Glass Mfg. Corp.,* 1990 WL 125368, *1–*2, 1990 U.S. Dist. LEXIS 10999, *2–*5 (N.D.Ill. August 20, 1990), the court held that the seller indemnified the buyer's CERCLA liability based on an indemnification clause which divided responsibility based on whether the liability arose out of pre-sale or post-sale events. The court held the seller liable for the all the clean up costs attributable to its conduct when it owned the business. *Id.*

Furthermore, defendant's interpretation is contradicted by the very language of the contract. In section 3.2(a), R & H indemnifies SKB for all liabilities relating to the pre-sale conduct of the Business, such

liabilities "specifically include, but are not limited to ... product liability claims not resulting from Buyer's own negligence and relating to products manufactured or sold by Seller prior to the [sale of the company], provided such products if sold by Buyer are sold within the applicable Federal Food and Drug Administration expiration dating limit." (Pl.'s Ex. 48 at 8–9). Under the terms of the contract, then, SKB would be indemnified for a product liability claim that "arose out of" its own post-sale conduct of selling the product. The product liability claim would not have come about but for SKB's post-sale conduct of selling the product, just as SKB's CERCLA liability would not have come about but for its disposal of hazardous substances. Under R & H's interpretation of the indemnification clause, however, it would seem that SKB would not be indemnified for such a product liability claim because the liability arose out of SKB's post-sale conduct. R & H's interpretation of the indemnification clause as not covering any liability which in any way arose out of post-sale conduct, is undermined by the fact that the contract specifically includes among indemnified liabilities one which arises out of post-sale conduct. A basic tenet of contract law is that a contract should be interpreted as a whole in a manner which does not render the contract internally inconsistent. *See Nevets C.M., Inc. v. Nissho Iwai Am. Corp.*, 726 F.Supp. 525, 533 (D.N.J.1989). An interpretation which gives reasonable meaning to all parts of the contract must be selected over an interpretation which annuls part of the contract. *Blake Constr. Co. v. United States*, 987 F.2d 743, 747 (Fed.Cir.1993). R & H's proposed interpretation of the indemnification clause would make the contract internally inconsistent. That interpretation, therefore, must be rejected in favor of SKB's proposed interpretation that section 3.2(a) indemnifies SKB for those clean up costs which are related to pre-sale conduct of the Business.

 R & H also argues that SKB's CERCLA liability cannot be divided. (Def.'s Reply Mem. at 6–7). Courts customarily impose joint and several liability for CERCLA claims. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268–69 (3d Cir.

1992). The defendant argues that because CERCLA liability is joint and several, SKB cannot divide its clean up costs for which it is liable based on whether they are related to pre-sale or post-sale conduct. R & H maintains that SKB must be either liable for the entire clean up or for none of it. This view, however, ignores the statutory language found in section 107(e)(1) of CERCLA that has been interpreted to give parties the freedom to allocate CERCLA liability among themselves while remaining jointly and severally liable to the government for the clean up of the contaminated site. *See, e.g., Olin*, 5 F.3d at 14; *John S. Boyd Co.*, 992 F.2d at 405; *Purolator Products*, 772 F.Supp. at 129; *Mobay*, 761 F.Supp. at 355 (D.N.J.1991). Even though R & H has indemnified SKB for the liabilities caused by pre-sale conduct of the Business, SKB remains jointly and severally liable to the government for the entire clean up of the Whitmoyer site. Section 107(e)(1) states that "[n]othing in this subsection shall bar any agreement to ... indemnify a party to such agreement for any liability under this section." 42 U.S.C. § 9607(e)(1). This allows parties to freely indemnify each other for CERCLA liability. It does not require that such indemnification be for the entire CERCLA liability, nor does it prohibit parties from agreeing to indemnify each other only for those CERCLA liabilities caused by the other, as was done in this case.

**4. Is section 3.2(a) the appropriate indemnity provision for SKB's CERCLA liability?**

R & H claims that section 9 of the purchase agreement precludes SKB's indemnification action. Section 9, titled "RandH's Representations", states that "all representations contained in this Section 9 shall survive the First Closing Date until December 31, 1980." (Pl.'s Ex. 48 at 23). SKB did not bring the present indemnification action until September 16, 1992. Section 9 contains two representations, sections 9.22 and 9.36, which R & H argues are the only feasible clauses within the agreement upon which SKB can base an indemnity claim for its CERCLA liability. If these are the only bases for

bringing an indemnity action for CERCLA liability, then SKB has filed its claim too late.

Under section 9.22, entitled "Condition of Property", R & H represents that

"[t]he properties relating to the Business (whether owned or leased), the improvements thereon and the machinery and equipment therein, taken as a whole, are in good operating condition, free from any known defects except such defects as do not materially interfere with the continued use thereof in the normal course of the operations of the Business as heretofore conducted. Seller has maintained the plant and equipment relating to the Business in accordance with good business practices."

(Pl.'s Ex. 48 at 36). This representation may be enforced through the indemnity provision contained in section 3.2(c) which states that R & H indemnifies SKB for "[a]ll losses, liabilities, damages or deficiencies to Buyer ... resulting ... from any material misrepresentation ... or nonfulfillment of any agreement or covenant on the part of Seller under any provision" of the purchase agreement.[7] (Id. at 10). R & H argues that the CERCLA liability imposed on SKB does not relate to the pre-closing "conduct of the Business" as set forth in section 3.2(a), but rather relates only to a condition of the property as set forth in section 9.22. R & H concludes that because SKB did not bring the indemnification action for misrepresentation under section 9.22 prior to the expiration date for such actions in 1980, SKB has no indemnity claim for its CERCLA liability.

■ R & H's interpretation is flawed for several reasons. First and foremost, the warranties found in section 9 are not the basis of SKB's claim. The claim is based upon the indemnity provision of section 3.2(a). Second, R & H's argument that CERCLA liability does not "relate to the

conduct of the Business" ignores the fact that the contamination of the property was a direct result of the operations of Whitmoyer Laboratories. R & H argues that because the liability is based on contamination of the ground at the Myerstown site, the liability must relate only to a condition of the property. The obvious flaw in this reasoning is that the contamination was released into the grounds of the Myerstown site through the conduct of the Business at the site. Clearly, the disposal of hazardous waste is business conduct when that waste was produced by the business' manufacturing process. Therefore, CERCLA liability is related to conduct of the Business and within the indemnification coverage of section 3.2(a).

■ Furthermore, section 9.22 is inapplicable to the present action because SKB seeks indemnification for liability which arose not out a breach of contract by the seller but out of a third party claim against SKB by the government. Section 9 and its corresponding indemnification provision at 3.2(c) deal exclusively with the buyer's remedy for the seller's breach of the agreement. Section 9 provides a means for the buyer, SKB, to seek remedies for a breach of a promise or a misrepresentation by the seller, R & H. In contrast, section 3.2(a) provides the buyer protection from liabilities arising out of third party claims against the buyer. The representations found in section 9 describe the business being bought. If that description proves to be inaccurate, the buyer has a remedy under section 3.2(c) for breach of promise. No third party is involved in such a claim. Because CERCLA liability is a third party claim and does not involve any misrepresentation or breach of promise by R & H, section 9 is not the appropriate section upon which SKB could base its indemnification claim. Thus, the indemnification provision in 3.2(a), not section 3.2(c), applies to SKB's CERCLA liability.

7. Section 3.2 sets out the three categories of indemnifications that R & H provided SKB. Section 3.2(a) is the comprehensive indemnity clause in which R & H indemnifies SKB for "all material liabilities relating to the conduct of the Business prior to the First Closing Date." Under section 3.2(b), R & H indemnifies SKB for specifically enumerated liabilities whether they relate to occurrences before or after the closing date.

These liabilities are explicitly limited to those named in the section. Section 3.2(c) provides that R & H indemnify SKB from losses resulting from any misrepresentation or breach of promise on the part of R & H. The indemnification under section 3.2(a) covers third party claims against the buyer, whereas section 3.2(c) provides indemnity only for violations of the agreement by the seller, R & H.

■ Likewise, the representation under section 9.36 is also inapplicable to SKB's CERCLA liability. Under section 9.36, R & H represented that it "does not have any reason to believe that any operation of the Business currently violates any [environmental] law or regulation in any material respect." (Pl.'s Ex. 48 at 49). Like section 9.22, this representation is not relevant to the indemnification of third party claims such as SKB's CERCLA liability. Furthermore, although this section alludes to environmental laws, it is irrelevant to SKB's CERCLA liability. This section merely states that R & H believes the Business to be in compliance with current environmental laws. The CERCLA liability involved in the present case is not based on whether an environmental law or regulation was violated in 1978. CERCLA liability is based on the status of the site, not on whether a previous owner was in compliance with the environmental laws in effect at that time.

R & H claims that if section 3.2(a) is interpreted to include indemnification of CERCLA claims, then sections 9.22 and 9.36 would be rendered superfluous. These sections would not be superfluous, however, because they serve a different purpose than section 3.2(a). Sections 9.22 and 9.36 provide the basis for a claim of misrepresentation against R & H. Section 3.2(a) indemnifies SKB against third party liability. This interpretation is supported by extrinsic evidence which demonstrates that the parties intended section 3.2(a) to indemnify third party claims even if those claims were based on a misrepresentation within section 9. In 1978, shortly after the sale of the Business to SKB, a number of lawsuits were brought against Whitmoyer for the death of animals caused by the product Sansalid, a veterinary drug produced by Whitmoyer. SKB sought indemnification from R & H for the claims asserted against SKB by third parties, for the loss of projected profits based on R & H's failure to disclose adverse tests of the drug and for breach of many of its representations found in section 9 of the purchase agreement. R & H and SKB settled the claim and entered into a settlement agreement which released R & H from liability for:

1. Claims in respect of Sansalid product liability;

2. Claims in respect of the diminished value of the Sansalid patents and the capital stock of Whitmoyer Laboratories, Inc. arising from the imminent FDA withdrawal of the Sansalid NADA; and

3. Claims resulting from any misrepresentation, breach of warranty or nonfulfillment of any agreement or covenant of R & H under Section 9 of [the] Agreement....

(Pl.'s Ex. 5). This release demonstrates the different functions of sections 9 and 3(a) of the purchase agreement. The second and third items released R & H from *any* liabilities resulting from misrepresentations under section 9. The first item on the release preserved SKB's right to indemnification for third party claims under section 3.2(a) with the exception of the specific Sansalid claims.

The Sansalid release demonstrates the breadth of section 3.2(a). SKB alleged that R & H made numerous misrepresentations concerning Sansalid under section 9. The fact that section 9 included representations concerning Sansalid, however, did not preclude indemnification under section 3.2(a) for third party claims related to the same drug. Similarly, the fact that section 9 includes representations concerning condition of the property does not preclude indemnification for third party claims based on a liability, such as CERCLA, which involves a condition of the property.

**5. Did SKB give R & H timely notification of its CERCLA indemnification claim?**

■ R & H asserts that SKB cannot obtain indemnity under section 3.2(a) because it did not give timely notice to R & H of the facts or circumstances which gave rise to the CERCLA liability. Under section 3.5, a party indemnified under section 3.2 or 3.3 must

"notify the indemnifying party ... in writing of any fact or circumstance which may give rise to liability under this Section with reasonable promptness after such fact or circumstance first comes to the attention of the Indemnitee. The Indemnitee will afford the Indemnitor the right to assume sole responsibility for the defense of any

such matter and settlement thereof involving a claim by a person other than Seller [or] Buyer ... provided such settlement is for money damages. No such settlement. will be effected without the Indemnitee's prior written consent. The Indemnitee will not unreasonably withhold such consent. The Indemnitee will cooperate with the Indemnitor in any such defense or settlement and will provide the Indemnitor access to and copies of such records as may be required reasonably for such defense or settlement."

(Pl.'s Ex. 48 at 12). On April 30, 1986, the government first notified SKB that it was considered to be potentially liable for the clean up of the Myerstown site. (Pl.'s Supp. Mem., Ex. 10). After a preliminary investigation of the facts, SKB gave R & H written notice of the possibility of its indemnity claim on January 28, 1987. (Def.'s Ex. B). Because SKB notified R & H within nine months of the government's expressed intent to pursue CERCLA actions for the Myerstown site, no issue of material fact exists as to the reasonable promptness of that notification.

R & H argues that SKB should have notified R & H of a possible indemnification claim in 1981 when it learned of the presence of arsenic in the groundwater and soils at the Myerstown site. Extensive environmental contamination existed at the Myerstown site before SKB purchased it in 1978. The "fact or circumstance" that would trigger SKB's duty to notify R & H of a possible indemnification claim under section 3.2(a) was not the presence of additional contaminants at the site, but the threat or assertion of a third party claim based on that contamination. SKB notified R & H within a reasonable amount of time after it learned that the government was about to assess CERCLA liability against it.

 Furthermore, under New Jersey law, an indemnitor may not refuse indemnification based on late notice unless there is a "likelihood of appreciable prejudice" to the indemnitor. *Cooper v. Government Employees Ins. Co.*, 51 N.J. 86, 237 A.2d 870, 874 (1968). The indemnitor has the burden of proof to show that it has suffered "appreciable prejudice" because of the late notice. *Solvents Recovery Serv. v. Midland Ins. Co.*, 218 N.J.Super. 49, 526 A.2d 1112, 1115 (1987). R & H has not presented any evidence that it was prejudiced by the purportedly late notification. In fact, R & H was able to fully participate in all aspects of the settlement with the government concerning the CERCLA liabilities of the Myerstown site. Based on the evidence submitted, no issue of material fact exists as to whether SKB's indemnification claim is precluded under section 3.5.

## 6. Which costs are indemnified?

The issue that remains is whether R & H indemnified SKB for those clean up costs attributable to pre-sale conduct of Whitmoyer Laboratories before R & H purchased it in 1964. This is a significant issue because much of the contamination may have been caused by the actions of the Business prior to 1964. Under section 3.2(a) of the purchase agreement, R & H indemnified SKB for "[a]ll material liabilities relating to the **conduct of the Business** prior to [the date of the sale]." (Pl.'s Ex. 48 at 8) (emphasis added). SKB argues that "conduct of the Business" includes the acts of Whitmoyer Laboratories before R & H purchased it in 1964. SKB supports this interpretation of section 3.2(a) by comparing it to the language in section 3.3(a). Under section 3.3(a), SKB indemnified R & H for "[a]ll losses, liabilities, damages or deficiencies to Seller resulting from the **operation of the Business by Buyer** after the First Closing Date." (Pl.'s Ex. 48 at 10–11) (emphasis added). SKB argues that by comparing these two sections, it is apparent that SKB was indemnified for liabilities relating to the prior conduct of Whitmoyer Laboratories including the conduct of the Business before R & H purchased it, whereas R & H was indemnified for only those liabilities caused by SKB's operation of the Business.

R & H claims that the "conduct of the Business" within this section refers only to the conduct of Whitmoyer Laboratories during R & H's ownership of the company. R & H argues that Whitmoyer was a corporate entity totally unaffiliated with R & H prior to

the purchase in 1964 and R & H did not indemnify SKB for the liabilities related to the conduct of Whitmoyer Laboratories before R & H bought it in 1964. (Def.'s Reply Mem. at 5 n. 1). R & H points to portions of the agreement which suggest that the parties did not attach an expansive meaning to the term "Business." Section 9.9 provides the following:

> Conduct of Business. The Business is not conducted through any of R & H's subsidiaries, affiliates or related companies other than WL, Rohm and Haas Australia Pty. Ltd., Rohm and Haas Belgium, S.A., Rohm and Haas Nordiska AB and Rohm and Haas Italia, S.p.A., and Seller does not have, beneficially or otherwise, a controlling interest in any other entity which competes to a material extent with the Business.

(Pl.'s Ex. 48 at 26). This language suggests that the "Business" is conducted only through the R & H subsidiaries listed. Whitmoyer Laboratories was not a subsidiary, affiliate or related company when it was not owned by R & H prior to 1964. Therefore, section 9.9 can be read to exclude from the meaning of the "Business" Whitmoyer Laboratories before its purchase by R & H.

The meaning of term "Business" is further clouded by the preamble of the agreement which states that

> "Seller manufactures and sells, and conducts research and development relating to, a line of animal health products ... and such business is conducted primarily by Whitmoyer Laboratories, Inc. ... and certain foreign subsidiaries and distributors.... The worldwide operations of such business, together with all of the assets relating thereto ... are referred to herein as the "Business."

(Pl.'s Ex. 48 at 1–2). This language suggests that the term "Business" refers to animal health products manufacturing operations conducted by Whitmoyer Laboratories and other subsidiaries that are also owned by R & H. This would not include entities not owned by R & H, such as pre–1964 Whitmoyer Laboratories.

■ At this stage of proceedings, the court cannot find as a matter of law that "conduct of the Business" includes conduct of Whitmoyer Laboratories before R & H purchased it in 1964. The determination of whether a contract term is clear or ambiguous is one of law reserved for the court. In making that determination, a court "must consider the words of the agreement, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings." *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 101 (3d Cir. 1986). Before the court can rule on the ambiguity of a term it should "hear the proffer of the parties and determine if there is objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980). In the present summary judgment motion, there has not been sufficient evidence for the court to find as a matter of law that "conduct of the Business" includes pre–1964 conduct of Whitmoyer Laboratories. The court, therefore, will deny SKB's summary judgment motion for the application of the indemnification clause to damages caused by pre–1964 conduct. By denying summary judgment on this point, however, the court is not concluding that "conduct of the Business" is necessarily ambiguous. The court will determine at trial, after hearing all relevant evidence and interpretations, whether these words are ambiguous under the purchase agreement.

## III. CONCLUSION

Because the court concludes that R & H indemnified SKB under the agreement for liabilities related to pre-sale conduct of the "Business", the court will grant, in part, and deny, in part, the plaintiff's motion for partial summary judgment on count II of its complaint. No material issue of fact exists as to whether the defendant is contractually liable to indemnify the plaintiff for liabilities for response costs attributable to the conduct by defendant prior to its purchase by SKB on March 31, 1978. Therefore, summary judgment will be granted on count II as to liability for those costs. The court, however, cannot, at this time, find as a matter of law that

defendant indemnified costs attributable to the conduct of Whitmoyer Laboratories before R & H purchased it on July 1, 1964. The court, therefore, will deny plaintiff's motion for summary judgment on count II as it relates to liability for costs caused by pre–1964 conduct. The defendant's motion for summary judgment on count II will be denied.

The court also finds, based on R & H's admission, that R & H is a liable party under CERCLA. Plaintiff's motion for partial summary judgment on count I, therefore, will be granted.