John DOE, a SEPTA Employee, Plaintiff

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY; and Judith Pierce, individually and in her official capacity, Defendants.

Civ. No. 93–5988.

United States District Court, E.D. Pennsylvania.

Dec. 1, 1994.

Clifford A. Boardman; David W. Webber and Yolanda French Lollis, AIDS Law Project of Pennsylvania, Philadelphia, PA, for plaintiff.

David P. Bruton, J. Freedley Hunsicker, Jr. and Daniel J. Brennan, Drinker, Biddle and Reath, Philadelphia, PA, for defendants.

## MEMORANDUM

YOHN, District Judge.

John Doe, an employee of the Southeastern Pennsylvania Transportation Authority ("SEPTA"), brings the present action for violations of his civil rights by his employer and Judith Pierce, a SEPTA official. This action arises from an incident in late 1992 in which Pierce learned that Doe was being treated for HIV–related illness. She learned this inadvertently, through reviewing information on the utilization of SEPTA's prescription benefit plan in connection with her position at SEPTA. Doe's amended eighteen-count complaint asserted various claims for civil rights violations, employment discrimination and state law torts. On October 18, 1994, the court granted Doe's motion to amend the complaint to withdraw counts I and V through XVIII. Presently before the court is the defendants' motion for summary judgment on the remaining claims, Counts II, III and IV, which allege separate claims under 42 U.S.C. § 1983 (1988) for violations of Doe's constitutional right to privacy, his right to procedural due process under the Fourteenth Amendment and his right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments. The court held oral argument on this motion on November 4, 1994, and on November 22, 1994, issued an order granting defendants' motion as to Count III and denying it as to Counts II and IV, with this memorandum to follow.

In accordance with the following discussion, the court concludes that Count II presents genuine issues of material fact regarding Pierce's purpose in showing the report to another SEPTA official and regarding SEPTA's policies and practices regarding the confidentiality of prescription benefits information; therefore, the court denied defendants' motion for summary judgment as to the constitutional right to privacy claim (Count II). The court further finds that Doe's allegations do not fairly present any liberty or property interest of which defendants' actions have deprived him; therefore, the court granted defendants' motion for summary judgment as to the procedural due process claim (Count III). Lastly, the court determines that whether defendants intruded upon Doe's reasonable expectation of privacy in his medical information presents a genuine issue of material fact; therefore, the court denied defendants' motion for summary judgment as to the Fourth Amendment claim (Count IV), without prejudice to defendants' right to raise such issues as standing, plain view and qualified immunity at trial.

## FACTUAL BACKGROUND

In September of 1992, SEPTA changed vendors for its employee prescription benefit

plan. (Aufschauer Dep. at 66.) Sometime in September of 1992, Doe filled his prescriptions for medications to combat his HIV infection at a Rite Aid pharmacy through that plan. In November, 1992, Rite Aid supplied SEPTA with its standard series of reports on employee usage of the prescription benefit plan, as it was obliged to do by contract. In connection with reviewing the new system, Pierce, then the Chief Administrative Officer for SEPTA, and Jacob Aufschauer, Manager of Benefits Planning and Administration, re-. viewed this report. (Pierce Dep. at 165–68 & Aufschauer Dep. at 93–94.) Their review had at least two goals: to evaluate usefulness of the form of the report for auditing prescription plan utilization, and to audit plan usage for suspected fraud or abuse and for possible cost reductions. (*See* Pierce Dep. at 167–68.) This report, probably one organized in terms of the expense of the total prescriptions filled by each employee, listed Doe's name, his medications and their prices. (*Id.* at 157.) Pierce, unfamiliar with the names of the drugs listed, called Dr. Louis van de Beek, head of SEPTA's medical department, on a speaker phone, to determine the uses of these medications. (*Id.* at 186–92, 206.) When they learned that at least one of the medications listed as having been purchased by Doe was used exclusively to treat HIV infection, Pierce and Aufschauer learned Doe's medical condition. (*Id.* at 201–04, 211–12.)

Although Doe states that a third party told him that Pierce disclosed his condition to others, the deposition excerpts presently before the court demonstrate only that Pierce showed the page of the report with Doe's name and medications on it to Dr. Richard Press, Doe's direct supervisor. (*Id.* at 227.) Pierce asked Press whether he would be able to audit the prescription plan usage from the information on the report. (*Id.*) Press, uncomfortable with the contents of the report, brought its existence and contents to the attention of SEPTA's General Counsel. (Kilcur Dep. at 31–35.) After his conversation with Pierce, van de Beek formed the impression that the list of drugs Pierce had asked about came from Doe's prescription record.[1]

He informed Doe of his suspicion. (van de Beek Dep. at 50.) Doe was extremely distressed to learn that his medical condition had been discovered by Pierce and possibly disclosed by her to others. (Doe Dep. at 156.) This suit followed.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Accord Small v. Seldows Stationery*, 617 F.2d 992, 994 (3d Cir.1980). The moving party need not produce evidence to disprove the non-moving party's claim but does carry the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The facts must be viewed in the light most favorable to the non-moving party, and any doubt as to the existence of a genuine issue of material fact is to be resolved in favor of the non-moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). In turn, the non-moving party cannot rely on the allegations contained in the complaint. Instead, the non-moving party must offer specific facts contradicting the facts averred by the movant which indicate that there is no genuine issue for trial. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

## DISCUSSION

 The remaining three counts of Doe's complaint assert violations of his constitutional rights using the mechanism of 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States

---

1. Apparently, Doe was taking a very new medi- cation, and van de Beek was aware of this fact.

or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

*Id.* It is axiomatic that "section 1983 does not in and of itself create or secure any substantive rights [but rather] merely authorizes a cause of action when rights secured by *another* source have been infringed." *Gonzalez v. Young,* 560 F.2d 160 (3d Cir. 1977) (emphasis in original), *aff'd,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). The parties do not dispute that SEPTA is a "person" subject to suit under § 1983 and that Pierce was acting "under color of state law" in reviewing the prescription information. Assuming this, a § 1983 cause of action has two elements: (1) a federally protected right is implicated and (2) the defendant's actions caused the plaintiff to be deprived of that right. *See Sample v. Diecks,* 885 F.2d 1099 (3d Cir.1989) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Analysis of a purported § 1983 claim therefore begins with identification of the specific federal right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989); *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Doe's remaining three counts allege infringement of three separate constitutional provisions: the constitutional right to privacy, the due process clause of the Fourteenth Amendment and the Fourth Amendment.

*Count II: Constitutional Right to Privacy*

 Doe alleges that Pierce's actions violated "the right most valued by civilized men," "the right to be let alone." *Olmstead v. United States,* 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). In *Whalen v. Roe,* 429 U.S. 589, 598–99, 97 S.Ct. 869, 875–76, 51 L.Ed.2d 64 (1977), the Court referred to a series of cases recognizing a constitutional right to privacy and further noted that these cases broke down into two distinct groups, protecting two different kinds of interests. The Court recognized that one interest protected by the constitutional right to privacy is "the individual interest in avoiding disclosure of personal matters." *Id.; accord Fraternal Order of Police, Lodge 5 v. City of Philadelphia,* 812 F.2d 105, 109 (3d Cir.1987) (*F.O.P.*) (quoting *Whalen* ); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir.1980) (also quoting *Whalen* ). Where government intrusion into or disclosure of private matters is alleged, the Third Circuit has indicated that a balancing test must be applied to determine whether the government's interest in access to the information outweighs the individual's interest in keeping the matter private. *F.O.P.,* 812 F.2d at 110 (citing *Trade Waste Management Ass'n v. Hughey,* 780 F.2d 221, 234 (3d Cir.1985) and *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3d Cir.1980)). In *Westinghouse,* the Third Circuit enunciated a list of seven factors to be considered in this balancing test:

> The factors which should be considered in deciding whether an intrusion into an individual's privacy is justified are the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

638 F.2d at 578. The *F.O.P.* court applied the *Westinghouse* balancing test to the city of Philadelphia as the government employer of police officers. 812 F.2d at 112–17. The city had sought various personal information, including prescription information, from applicants to its newly-created Special Investigations Unit. *Id.* at 108–09. *Westinghouse* and *F.O.P.* thus lay out the framework for analyzing the constitutional repercussions of a government employer seeking private information from its employees.

Pierce and SEPTA seek to avoid application of the *Westinghouse* factors and instead assert that under *Whalen*, Doe's suit cannot go forward as a matter of law. *Whalen* concerned a facial challenge to a New York statute requiring that prescriptions for certain legal but dangerous drugs be written and filled on a particular form and a copy sent to a central repository. *Id.* at 591, 97 S.Ct. at 872. The information on record with the state Department of Health included the patient's name, age and address, the drug prescribed, the dosage, and the names of the physician and pharmacist. *Id.* at 593, 97 S.Ct. at 873. The Court upheld the validity of the statute, reasoning that the security provisions of the statute were sufficient to survive a facial challenge.[2] *Id.* at 600–01, 97 S.Ct. at 876–77. The Court found little danger of public disclosure of the prescription information and held that the compelled disclosures to employees of the New York Department of Health were "not meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *Id.* at 602, 97 S.Ct. at 878. The Court held that "[r]equiring such disclosures to representatives of the State having responsibility for the health of the community does not automatically amount to an impermissible invasion of privacy." *Id.* Defendants essentially argue that *Whalen* holds the converse of the statement just quoted: that where there is no public disclosure, the government automatically does not violate an individual's right to privacy by obtaining and reviewing his or her prescription information. *Whalen* does not stand for so broad a proposition. In neither *Westinghouse* nor *F.O.P.* did the Third Circuit consider *Whalen* to be dispositive. Instead, in *F.O.P.* the court used the *Westinghouse* factors to determine whether by seeking applicants' prescription information, the city, as employer, violated its employees' constitutional right to privacy.

Of particular interest in *F.O.P.* is the Third Circuit's treatment of question 19 in the questionnaire at issue, which asked: "Are you presently using any prescription drugs? If yes, state the drug, the need for it and the dosage." 812 F.2d at 112. The court's analysis of this question provides the most direct guidance on the issue of what limits the constitutional right to privacy places upon a government employer seeking prescription information from its employees. In *F.O.P.*, the court first examined whether the particular questions asked intruded upon the respondent's privacy. *See id.* In doing so, the court looked at whether the information sought was "within an individual's reasonable expectations of confidentiality." *Id.* The *F.O.P.* court concluded that question 19, among other medical information questions, was entitled to privacy protection. *Id.* at 113 (citing *inter alia Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977), *In re: Search Warrant (Sealed)*, 810 F.2d 67 (3d Cir.1987), *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3233, 97 L.Ed.2d 739 (1987) and *United States v. Westinghouse*, 638 F.2d 570, 577 & n. 5 (3d Cir.1980) as recognizing constitutionally protected status of medical information). Pierce and SEPTA argue that Doe could have had no "reasonable expectations of confidentiality" in his prescription information, given that SEPTA's prescription benefit plan was self-insured. Doe, on the other hand, testified at his deposition that he had asked his superior about the confidentiality of prescriptions filled through the SEPTA plan. (Doe Dep. at 203–05.) Whether his prescription information was within Doe's "reasonable expectations of confidentiality" presents a genuine issue of material fact which precludes summary judgment.

In addition, assuming that the prescription information, in the form in which it was

2. The Court described the security precautions involved in the New York system:

The receiving room is surrounded by a locked wire fence and protected by an alarm system. The computer tapes containing the prescription data are kept in a locked cabinet. When the tapes are used, the computer is run "off-line," which means that no terminal outside of the computer room can read or record any information. Public disclosure of the identity of patients is expressly prohibited by the statute and by a Department of Health regulation. Willful violation of these prohibitions is a crime punishable by up to one year in prison and a $2,000 fine.

429 U.S. at 594–95, 97 S.Ct. at 873–74.

received,[3] represented an intrusion into a protected privacy interest, the court would next identify the government interest furthered by access to the information. Doe argues that his rights were violated at four separate points: 1) SEPTA failed to safeguard his rights by failing to require Rite Aid to provide prescription information without names attached; 2) Pierce violated his rights by not setting the report aside when she realized that it included names; 3) Pierce and Aufschauer violated his rights when they learned his HIV status through the report; and 4) Pierce violated his rights when she showed the report to Press and indirectly revealed Doe's HIV status to him.[4] Doe contends that Pierce and SEPTA had no legitimate interest in learning the ailments of SEPTA employees, which the prescription records indirectly revealed. SEPTA and Pierce argue in response that she had an obligation to review the report to determine whether its format would enable her to audit the prescription drug benefit plan effectively. Pierce's deposition testimony indicates that her objective in learning what the medications were used for was as a rough indicator of potential fraud—large monthly expenditures for cancer medications were not suspicious whereas similar expenditures for other drugs might be. (Pierce Dep. at 122, 165–68.) Pierce also testified in her deposition that she showed Press the page of the report with Doe's name on it in order to determine whether he could audit prescription benefits usage from the report as it was formatted. (*Id.* at 227–30.) However, she further testified that to her knowledge, Press had never done such an audit. (*Id.* at 230–31.) Pierce testified that when she showed Press the report with Doe's name on it, she knew from his expression that he knew Doe was HIV positive and asked him "How long have you known?" (*Id.* at 233–34.) She declined to testify as to what her motives were in discussing Doe's condition with Press. (*Id.* at 235.) Whether Pierce had a legitimate governmental interest in showing Press the report and thus disclosing Doe's HIV status to him presents a second genuine issue of material fact which precludes summary judgment at this stage.

Lastly, assuming that the information was protected and that Pierce and SEPTA had a legitimate governmental interest in examining it, the court would use the *Westinghouse* factors to balance the identified governmental interest against Doe's privacy interest to determine whether a constitutional violation occurred. The fifth *Westinghouse* factor presents a third genuine issue of material fact which precludes summary judgment. The fifth factor is the adequacy of safeguards against unauthorized disclosure. *Westinghouse*, 638 F.2d at 578; *see also Whalen*, 429 U.S. at 605–06, 97 S.Ct. at 879 (noting that Court did not decide "any question which might be presented by ... a system that did not contain comparable security provisions"). Pierce's deposition testimony indicates that while the people handling the prescription plan utilization reports generally treated them as "confidential," there were no specific practices or policies to protect that confidentiality. (Pierce Dep. at 124–26, 218–22, 238–39.) Doe argues in his response to defendants' motion that the prescription information was "floating around" SEPTA. The question of the existence and extent of safeguards to protect the confidentiality of the prescription utilization information presents a genuine issue of material fact which precludes summary judgment. *See Westinghouse*, 638 F.2d at 579–80 (discussing confidentiality regulations and procedures to which information would be subject as weighing in favor of governmental access to pro-

---

3. The court duly notes that neither Pierce nor SEPTA sought to have the prescription utilization information provided with names attached. When deposed, Pierce testified that the names were, in fact, "irrelevant" to her purpose in auditing the report for suspected fraud and for potential savings. It is undisputed that once Pierce and SEPTA recognized that the presence of names on these reports presented a potential confidentiality problem, SEPTA *required Rite Aid not to include names in any future reports.* Ap-

parently, the series of reports at issue in this suit is the only one SEPTA received from Rite Aid which included employee names.

4. If showing Press the report amounted to a violation of Doe's constitutional rights, then the fact that Doe had previously voluntarily revealed his HIV status to Press goes to the issue of whether Doe can show any injury attributable to this violation.

tected information). Pierce and SEPTA argue that Doe's reliance on the lack of safeguards is misplaced in view of the apparent lack of disclosure to anyone other than Pierce, Aufschauer and Press. The court finds that the scope of disclosure affects the *Westinghouse* analysis, but is insufficient to entitle defendants to judgment as a matter of law. In view of the genuine issues of material fact remaining to be decided, the court denied defendants' motion for summary judgment as to Doe's constitutional right to privacy claim.

### Count III: Fourteenth Amendment

■ Although the parties treat Count III as a procedural due process claim, the text of Count III, provided in the margin,[5] on its face presents only a substantive due process claim. In his response to defendants' summary judgment motion, Doe treats Count III as a procedural due process claim. He has therefore abandoned any substantive due process claim.[6] Assuming *arguendo* that Count III asserts a violation of Doe's right to procedural due process, it fails to state a claim upon which relief may be granted. As defendants point out in their motion for summary judgment, Doe has failed to allege a liberty or property interest in his employment of which defendants deprived him. Doe's response to defendants' motion fails to respond to this point, merely arguing in conclusory terms that Doe was entitled to notice before Pierce and SEPTA reviewed his prescription information. The two cases primarily cited by Doe in support of his position, *Detroit Edison Co. v. N.L.R.B.*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979), and

*United States v. Westinghouse*, 638 F.2d 570 (3d Cir1980), both involved the constitutional right to privacy not procedural due process. In *Detroit Edison* the Supreme Court held that the employees' constitutional right to privacy required that a union obtain consent from employees before reviewing psychological tests in their employer's files. 440 U.S. at 317, 99 S.Ct. at 1132. In *Westinghouse*, the Third Circuit similarly held that employees' constitutional right to privacy required the National Institute for Occupational Safety and Health to notify employees that it was reviewing their employer's medical records on them and to provide the employees with the opportunity to raise individual privacy objections. 638 F.2d at 581. These cases do not establish that Doe was deprived of procedural due process under the circumstances of this case. Defendants Pierce and SEPTA are entitled to judgment as a matter of law on the claim as articulated in plaintiff's complaint and brief and on the basis of the cases cited by plaintiff in support thereof. Accordingly, the court granted summary judgment in favor of the defendants on Count III.

### Count IV: Fourth Amendment

■ Doe contends that his constitutional privacy interest in his "private medical facts" represents an interest protected by the Fourth Amendment prohibition against unreasonable searches and seizures. He contends that either the contractual requirement on Rite Aid to provide the information or Pierce's reading of the report after she realized that it contained names, or the combination of them, amounted to a Fourth Amendment search.[7] He argues by analogy to

---

5. Count III reads in its entirety:
*Constitutional Right to Due Process: 42 U.S.C. § 1983*
 43. Plaintiff repeats and realleges each paragraph in this Complaint as though fully set forth herein.
 44. Defendants have violated Plaintiff's Right to Due Process under the 5th and 14th Amendments of the United States Constitution by:
 a. invading his privacy;
 b. denying him promotion and salary for reasons that were arbitrary, irrational and bigoted.

6. The court notes in addition that when the constitutional right to privacy is tied to any constitu-

tional provision, substantive due process is usually cited as its textual basis. *See Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973) (suggesting that constitutional right to privacy is rooted in "Fourteenth Amendment's concepts of personal liberty and restrictions upon state action"). Thus, any substantive due process claim in Count III would appear to be substantially a restatement of Count II.

7. Under this analysis, showing the report to Press effectively expanded the scope of the search.

cases regarding the Fourth Amendment implications of drug-testing: *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) and *National Treasury Employees Union v. Von Raab,* 816 F.2d 170 (5th Cir.1987) *aff'd in part & vacated in part,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989). The Fourth Amendment search involved in these cases, however, was the taking of blood and urine samples and testing them for drugs, not simply the seeking of private information. *Skinner,* 489 U.S. at 618, 109 S.Ct. at 1413 (collection of biological samples for drug-testing represents Fourth Amendment search). Doe does not cite any case suggesting that the government engages in a search subject to the Fourth Amendment merely by seeking information which the individual concerned considers private.

It is clear, however, that as a government employer, SEPTA's actions were subject to the constraints of the Fourth Amendment. *O'Connor v. Ortega,* 480 U.S. 709, 715, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987). The undisputed factual record of this case shows that Pierce examined prescription benefits utilization data from Rite Aid. This examination infringed upon Doe's Fourth Amendment rights if it amounted to an unreasonable Fourth Amendment search. The Supreme Court has defined a Fourth Amendment search as a government intrusion into "an expectation of privacy that society is prepared to consider reasonable." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). The Court has noted that although a government employee may have an expectation of privacy in his or her workplace, the reasonableness of that expectation must be "assessed in the context of the employment relation." *O'Connor,* 480 U.S. at 715–16, 107 S.Ct. at 1496–97. As discussed above in connection with Doe's constitutional right to privacy claim, Doe's expectation of confidentiality in his prescription information, which the court interprets in this case as essentially equivalent to his expectation of privacy for Fourth Amendment purposes, presents a genuine issue of material fact which precludes summary judgment. The court therefore denied defen-

dants' motion for summary judgment as to Count IV. However, this result does not preclude defendants from raising at trial such issues as: whether Doe has standing to object to the search of information which was in the custody of Rite Aid; whether in view of the fact that neither SEPTA nor Pierce requested that the names appear on the Rite Aid reports, the plain view doctrine might apply; and whether even if Doe's allegations fairly present an infringement upon his Fourth Amendment rights, defendants might nonetheless be protected from liability by the doctrine of qualified immunity.

## CONCLUSION

Because Count III fails to allege any liberty or property interest of which defendants' actions deprived Doe, it fails to state a claim for deprivation of procedural due process. Accordingly, the court granted defendants' motion for summary judgment on Count III. Counts II and IV, however, present proper claims of deprivation of Doe's constitutional right to privacy and of deprivation of Doe's Fourth Amendment right to be free from unreasonable searches and seizures. Because both Counts II and IV present genuine issues of material fact for trial, the court denied defendants' motion for summary judgment on these claims. The court has not addressed such issues as Doe's standing to challenge a search of information in the custody of Rite Aid and whether the plain view doctrine or qualified immunity might apply to this case; defendants are therefore free to raise them at trial.