ELF ATOCHEM NORTH AMERICA

v.

UNITED STATES of America, et al.

UNITED STATES of America

v.

WITCO CORPORATION.

Civ. A. Nos. 92–7458, 94–0662.

United States District Court, E.D. Pennsylvania.

Nov. 1, 1994.

William J. Kennedy, Frederick G. Herold, Eli R. Brill, Dechert, Price & Rhoads, Philadelphia, PA, Brud Rossmann, U.S. Dept. of Justice, Environmental and Natural Resources Div., Jonathan A. Marks, U.S. Dept. of Justice, Environmental Enforcement Section, Washington, DC, for Elf Atochem North America, Inc.

Michael R. Lazerwitz, Charles F. Lettow, Christopher G. Smith, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, for Witco Corp.

## MEMORANDUM

JOYNER, District Judge.

Before us today are cross-motions to dismiss and/or for summary judgment with respect to the United States' Counterclaim against Elf Atochem North America, Inc. This Court has described the facts of these consolidated actions in other opinions and they will not be repeated at length here. Briefly, Elf and the United States Environmental Protection Agency (EPA) settled claims the EPA brought against Elf under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–75 (1983 & Supp.1994), for contamination existing at a one-time DDT factory owned by Elf's predecessor in interest. In docket number 92–7458, Elf now sues the United States of America for contribution. Its claim is based on the fact that during World War Two much of the equipment used to manufacture the DDT was leased from a defunct United

States agency known as the Defense Plant Corporation (DPC).[1]

### Standards

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

■ This litigation concerns the interpretation of an indemnity clause. This is a question of law, and therefore, is suitable for resolution by summary judgment. *Hatco Corp. v. W.R. Grace & Co.*, 801 F.Supp. 1309, 1318 (D.N.J.1992). We apply general federal contract law because the federal government is a party to the contract. *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484 (9th Cir.), *cert. denied*, 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985).

### Discussion

■ The DPC's counterclaim against Elf is based on an indemnity clause in the Agreement of Lease signed in 1944. This clause provides:

Fourteen: Lessee agrees to save Defense Corporation harmless against any liability whatsoever because of accidents or injury to persons or property occurring in the operation or use of the [leased] Machinery by Lessee. Lessee also agrees that during the term of this lease or any extension thereof, it will procure and maintain at its cost public insurance and property damage insurance in such amounts and with such companies as Defense Corporation shall approve or require. The policies evidencing such insurance shall name Defense Corporation as an assured and shall be delivered to Defense Corporation.

The DPC argues that this indemnity clause covers liability under CERCLA, whereas Elf argues that for a number of reasons, it does not. Because we find that the clause itself is not ambiguous and that the clause's terms do not extend to cover CERCLA actions, we do not address most of Elf's arguments.

■ In the Third Circuit, private indemnity clauses are effective to allocate CERCLA costs, but cannot transfer actual liability from one party to another. *Beazer East v. Mead Corp.*, 34 F.3d 206, 210 (3d Cir.1994); *Tippins Inc. v. USX Corp.*, 37 F.3d 87 (3d Cir.1994); 42 U.S.C. § 9607(e)(1).

■ In order for a pre-CERCLA indemnification clause to cover CERCLA liability, courts have uniformly held that the clause must be either "[1] specific enough to include CERCLA liability or [2] general enough to include any and all environmental liability which would, naturally, include subsequent CERCLA claims." *Beazer*, 34 F.3d at 210; The clause must be clear and unequivocal. *Hatco*, 801 F.Supp. at 1321; *Purolater Prods. v. Allied–Signal*, 772 F.Supp. 124, 131 (W.D.N.Y.1991). Many federal courts have interpreted pre-CERCLA indemnification clauses to determine whether they cover CERCLA liability.

■ The key is whether there is language limiting the indemnity and whether the language shows an intent to allocate all possible liabilities among the parties. If there is lim-

---

1. To make clear the distinction between the branch of the federal government suing Elf and the branch of the federal government being sued by Elf, the Defendant in 92–7458 is referred to as DPC. The Plaintiff in 94–0662 is referred to as EPA.

iting language, the clause does not cover CERCLA. *SmithKline Beecham Corp. v. Rohm & Haas Co.*, 854 F.Supp. 1201, 1208 (E.D.Pa.1994); *Purolater Prods.*, 772 F.Supp. at 130. So, when a seller agreed to indemnify a buyer against "all material liabilities relating to the conduct of the business prior to the First Closing Date" and in return the buyer agreed to indemnify the seller against all losses and liabilities "resulting from the operation of the Business by Buyer after the First Closing Date," our Court held that "[t]he indemnification section clearly expresses the parties' intent to allocate between the two parties all present and future liabilities. [Therefore,] CERCLA liability must be included among the future unknown liabilities which the parties allocated between themselves." *SmithKline*, 854 F.Supp. at 1208. Similarly, a clause stating that Conalco "releases and settles all claims of any nature which Conalco now has or hereafter could have against Olin" was unlimited enough to include CERCLA liability. *Olin Corp. v. Consolidated Aluminum Corp.*, 807 F.Supp. 1133, 1143 (S.D.N.Y.1992), *aff'd*, 5 F.3d 10 (2d Cir.1993).

In contrast, the following clause did not cover CERCLA liability because it was too restricted. It covered:

> all obligations and liabilities relating to the [ ] plant or [ ] products arising out of claims made, or suits brought, on or after the Closing Date for (i) injury, sickness, disease or death of any person, or (ii) any damages to any property, in either case which is ultimately determined by the finder of fact to have resulted from any condition existing, substance consumed or discharged, product manufactured or action taken or omitted (such conditions, substances, products and action being hereinafter in this Section 3 called 'Causes') on or after the Closing Date, whether or not such cause existed prior to the Closing Date. *Mobay v. Allied–Signal, Inc.*, 761 F.Supp. 345, 355 (D.N.J.1991).

The Court held that this language was "stereotypical of the type of language used to indemnify a transferor against a tort, nuisance or trespass claim." *Id.* at 358.[2]

The Agreement of Lease reads, "Lessee agrees to save Defense Corporation harmless against any liability whatsoever *because of* accidents or injury to persons or property occurring in the operation or use of the Machinery by Lessee." We find that this language is more similar to the language in *Mobay* than the language in clauses that cover CERCLA claims. The Agreement of Lease does not clearly or unequivocally allocate all present and future claims. It is not a broad waiver of "all liabilities of any type whatsoever," but rather a waiver of all liabilities of a specific nature. Accordingly, the clause does not indemnify the United States from Elf's CERCLA contribution claim.

Because of this finding, we do not address Elf's numerous other arguments, such as the use of anti-drafter or anti-indemnitee rules of construction, or whether the indemnification clause survived beyond the term of the lease.