# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1085**

**CA 13-00751**

PRESENT: SMITH, J.P., PERADOTTO, CARNI, VALENTINO, AND WHALEN, JJ.

---

LHR, INC., PLAINTIFF-APPELLANT-RESPONDENT,

V                                                    MEMORANDUM AND ORDER

T-MOBILE USA, INC. AND SUNCOM WIRELESS
OPERATING COMPANY, LLC,
DEFENDANTS-RESPONDENTS-APPELLANTS.

---

SCHRÖDER, JOSEPH & ASSOCIATES, LLP, BUFFALO (LINDA H. JOSEPH OF
COUNSEL), FOR PLAINTIFF-APPELLANT-RESPONDENT.

JAECKLE FLEISCHMANN & MUGEL, LLP, BUFFALO (B. KEVIN BURKE, JR., OF
COUNSEL), AND KLEINBARD BELL & BRECKER LLP, PHILADELPHIA,
PENNSYLVANIA, FOR DEFENDANTS-RESPONDENTS-APPELLANTS.

---

Appeal and cross appeal from an order of the Supreme Court, Erie County (John A. Michalek, J.), entered March 25, 2013. The order, among other things, granted those parts of the motion of defendants for partial summary judgment seeking to limit plaintiff's damages and to dismiss the cause of action for intentional interference with contract, but denied that part of the motion seeking to dismiss the cause of action for conversion.

It is hereby ORDERED that the order so appealed from is unanimously modified on the law by vacating the second, fourth, and fifth ordering paragraphs, denying that part of the motion seeking to limit plaintiff's damages to $1.2 million, and granting that part of the motion seeking to dismiss the 29th cause of action, and as modified the order is affirmed without costs.

Memorandum: Plaintiff, a debt collection agency, commenced this action seeking damages resulting from defendants' alleged breach of contract and negligence with respect to the sale by defendant SunCom Wireless Operating Company, LLC (SunCom) of delinquent customer accounts to plaintiff. From November 2005 until March 2008, plaintiff and SunCom executed six "Purchase and Sale Agreements" (purchase agreements). Four of the purchase agreements involved the transfer of a single debt portfolio; the other two agreements, which the parties refer to as "forward flow agreements," provided for the transfer of debt portfolios on a monthly basis. The purchase agreements are largely identical, although the forward flow agreements contain modifications to reflect the ongoing nature of the arrangement. As particularly relevant here, article 5 of each of the purchase agreements includes certain indemnification obligations on the part of

plaintiff and SunCom, and provides that the "Seller," i.e., SunCom, "will not be required to indemnify, and will not otherwise be liable to, [plaintiff] for Seller's indemnification obligations under this Article 5 for any amounts in excess of a maximum aggregate amount of Two Hundred Thousand Dollars ($200,000)."

In or about February 2008, SunCom became a wholly-owned subsidiary of defendant T-Mobile USA, Inc. (T-Mobile). According to plaintiff, SunCom and/or T-Mobile, as successor in interest to the purchase agreements, breached those agreements by failing to provide plaintiff with documents necessary to verify the amount of the debt transferred under the agreements. Plaintiff also initially alleged that defendants acted negligently in failing to preserve the necessary documents. Supreme Court granted in part defendants' motion to dismiss the complaint by dismissing the negligence cause of action against SunCom, granted in part plaintiff's cross motion for leave to amend the complaint by permitting plaintiff to add a cause of action against T-Mobile for intentional interference with contract, and denied that part of plaintiff's cross motion seeking to add a cause of action against T-Mobile for conversion. On a prior appeal, this Court modified that order by dismissing the negligence cause of action against T-Mobile, and granting plaintiff leave to amend the complaint to include a cause of action for conversion against T-Mobile (*LHR, Inc. v T-Mobile USA, Inc.*, 88 AD3d 1301). Defendants thereafter moved for partial summary judgment seeking to limit plaintiff's damages to $1.2 million, i.e., $200,000 on each of the six purchase agreements, and to dismiss plaintiff's causes of action against T-Mobile for conversion and intentional interference with contract. The court granted those parts of defendants' motion seeking to limit plaintiff's damages and to dismiss the cause of action for intentional interference with contract, but denied that part of the motion seeking to dismiss the cause of action for conversion. Plaintiff appeals and defendants cross-appeal.

Contrary to plaintiff's contention on its appeal, we conclude that the court properly determined that the clear and unambiguous language of the indemnification provisions of the purchase agreements apply to this action. The purchase agreements provide that they are to be "governed by, and construed and enforced in accordance with[,] the laws of the Commonwealth of Pennsylvania," and all parties agree that Pennsylvania law applies here. "In undertaking the interpretation of a contract under Pennsylvania law, the court must begin with the language of the contract itself" (*United States Steel Corp. v Lumbermens Mut. Cas. Co.*, 2005 WL 2106580, *7 [US Dist Ct, WD Pa, Aug. 31, 2005, No. Civ. A. 02-2108]). "The ultimate goal of interpreting a contract is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement" (*County of Delaware v J.P. Mascaro & Sons, Inc.*, 830 A2d 587, 591, *affd* 582 Pa 590, 873 A2d 1285). Where contractual language is "clear and unambiguous, the focus of interpretation is upon the terms of the agreement *as manifestly expressed*, rather than as, perhaps, silently intended" (*Steuart v McChesney*, 498 Pa 45, 49, 444 A2d 659, 661; *see Halpin v LaSalle Univ.*, 432 Pa Super 476, 481,

639 A2d 37, 39, *appeal denied* 542 Pa 670, 668 A2d 1133). "A contract is not rendered ambiguous by the mere fact that the parties do not agree upon its proper construction" (*J.P. Mascaro & Sons, Inc.*, 830 A2d at 591; *see Halpin*, 432 Pa Super at 482, 639 A2d at 39; *see also 12th St. Gym, Inc. v General Star Indem. Co.*, 93 F3d 1158, 1165). Rather, "[a] contract is ambiguous if it is *reasonably susceptible* of different constructions and capable of being understood in more than one sense" (*Trizechahn Gateway LLC v Titus*, 601 Pa 637, 653, 976 A2d 474, 483 [internal quotation marks omitted and emphasis added]; *see Madison Constr. Co. v Harleysville Mut. Ins. Co.*, 557 Pa 595, 606, 735 A2d 100, 106).

Here, we agree with defendants that the indemnification provisions at issue herein are broadly worded and encompass first-party claims, i.e., claims between the contracting parties (*see SBA Network Servs., Inc. v Telecom Procurement Servs., Inc.*, 250 Fed Appx 487, 492 [3rd Cir 2007]; *Waynesborough Country Club of Chester County v Diedrich Niles Bolton Architects, Inc.*, 2008 WL 4916029, *4-5 [ED Pa, Nov. 12, 2008, No. Civ. A. 07-155]; *STS Holdings, Inc. v CDI Corp.*, 2004 WL 739869, *2-3 [US Dist Ct, ED Pa, Mar. 19, 2004, No. Civ. A. 99-3480]; *Circuit City Stores, Inc. v Citgo Petroleum Corp.*, 1995 WL 393721, *5 [US Dist Ct, ED Pa, June 29, 1995, No. Civ. A. 92-7394]; *see also Benchmark Group, Inc. v Penn Tank Lines, Inc.*, 612 F Supp 2d 562, 594 n16 [ED Pa 2009]). We note that nothing in article 5 of the purchase agreements limits that article's provisions to claims commenced by third parties (*see STS Holdings, Inc.*, 2004 WL 739869, at *3; *Circuit City Stores, Inc.*, 1995 WL 393721, at *5). To the contrary, section 5.5 of the purchase agreements, entitled "<u>Procedure for Indemnification</u>," specifically contemplates first-party indemnification claims. Because the relevant provisions of the purchase agreements are unambiguous, we must enforce the language as written (*see Waynesborough Country Club of Chester County*, 2008 WL 4916029, at *3; *see generally Madison Constr. Co.*, 557 Pa at 606, 735 A2d at 106). Although plaintiff contends that such result is unfair and economically unreasonable, it is well established that "[a] court may not rewrite [a] contract for the purpose of accomplishing that which, in its opinion, may appear proper, or, on general principles of abstract justice . . . make for [the parties] a better contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance" (*Steuart*, 498 Pa at 51, 444 A2d at 662). Thus, the court properly concluded that plaintiff is bound by the indemnification provisions and, thus, the limitations on liability set forth in article 5 of the purchase agreements (*see STS Holdings, Inc.*, 2004 WL 739869, at *3).

We agree with plaintiff, however, that there is an issue of fact whether the $200,000 limitation on liability applies to each of the six purchase agreements executed by the parties or to each of the 28 debt portfolio transfers collectively consummated thereunder. In order to affirm an order granting " 'summary judgment on an issue of contract interpretation, we must conclude that the contractual

language is subject to only one reasonable interpretation' " (*Sanford Inv. Co., Inc. v Ahlstrom Mach. Holdings, Inc.*, 198 F3d 415, 420-421). Here, we conclude that the language of the purchase agreements is ambiguous, i.e., it is "subject to more than one reasonable interpretation when applied to a particular set of facts" (*Shepard v Temple Univ.*, 948 A2d 852, 857), and thus that the court erred in granting partial summary judgment to defendants limiting plaintiff's damages to $200,000 per purchase agreement.  We therefore modify the order accordingly.

As noted above, the parties executed a total of six purchase agreements containing the indemnification clauses at issue—the four agreements transferring individual debt portfolios and the two forward flow agreements.  The forward flow agreements provide that each of the monthly debt portfolio transfers are "[s]ubject to the terms of this Agreement," and that the accounts are to be "transferred and assigned pursuant to a Bill of Sale in the form attached [t]hereto."  The language of the forward flow agreements and the form bill of sale support defendants' interpretation, accepted by the court, that article 5's limitation of liability applies to the six agreements, not to each separate debt portfolio transfer.  According to the court, "[c]onstruing the writings themselves, the Bills of Sale and Assignments of Accounts were not intended to be separate agreements from the [purchase agreements] under which they were issued."  We note, however, that the parties did not use the form bill of sale attached to the forward flow agreements for their subsequent transactions, and that the bills of sale that they actually executed appear to function as stand-alone agreements.  Specifically, the bills of sale accompanying each forward flow agreement do not refer back to the forward flow agreement, but rather refer to a separate "Purchase Agreement" dated as of the date of the transfer.  The bills of sale were accompanied by an "Inventory of Receivables included under this Agreement"; a document listing the number and face value of the accounts transferred, the total purchase price, the total due at closing, and the closing date; and a cover page entitled "General Terms and Conditions," which is followed by a copy of the forward flow agreement.  The parties followed the same pattern with respect to the first five bills of sale executed under the second forward flow agreement.  After plaintiff terminated the second forward flow agreement and amended the agreement to provide for a lower purchase price, the parties amended the bill of sale to refer back to the second forward flow agreement.

We conclude that the imprecise language contained in the earlier bills of sale is ambiguous, i.e., "it is reasonably susceptible of different constructions and capable of being understood in more than one sense" (*Madison Constr. Co.*, 557 Pa at 606, 735 A2d at 206 [internal quotation marks omitted]).  Specifically, it is unclear whether the terms and conditions of the forward flow agreements—most notably, the indemnification provisions—apply to *all* of the debt portfolio transfers under a given purchase agreement or to *each* debt portfolio transfer, individually.  In our view, that ambiguity presents an issue "of fact for the trier of fact to resolve in light

of the extrinsic evidence offered by the parties in support of their respective interpretations" (*Sanford Inv. Co., Inc.*, 198 F3d at 421; *see School Dist. of City of Monessen v Farnham & Pfile Co., Inc.*, 878 A2d 142, 149; *Juniata Val. Bank v Martin Oil Co.*, 736 A2d 650, 663; *see generally Community Coll. of Beaver County v Community Coll. of Beaver County, Socy. of the Faculty [PSEA/NEA]*, 473 Pa 576, 592, 375 A2d 1267, 1275). Here, plaintiff's president and vice president averred that each debt portfolio purchased under the forward flow agreements constituted a separate and distinct contract. Plaintiff's expert likewise opined that "[i]t is generally understood and accepted in the [debt collection] industry that a forward flow agreement sets forth the general terms and conditions for each successive monthly purchase, and that each sale of a portfolio is a separate and distinct contract or agreement." Thus, in his opinion, there were "28 separate contracts entered into between the parties" and "any limitation on the indemnification obligation would apply to each separate portfolio purchase." In light of plaintiff's extrinsic evidence and the well-settled principle that "indemnity clauses are construed most strictly against the party who drafts them especially when that party is the indemnitee" (*Ratti v Wheeling Pittsburgh Steel Corp.*, 758 A2d 695, 702, *appeal denied* 567 Pa 715, 785 A2d 90), we conclude that the court erred in accepting defendants' interpretation of the contract and in limiting plaintiff's damages to $1.2 million upon defendants' motion for partial summary judgment (*see School Dist. of City of Monessen*, 878 A2d at 149; *Juniata Val. Bank*, 736 A2d at 663-664).

Contrary to plaintiff's final contention, we conclude that the court properly dismissed the cause of action for tortious interference with contract against T-Mobile. As SunCom's successor in interest to the purchase agreements, T-Mobile cannot be liable for interfering with its own contract (*see Ahead Realty LLC v India House, Inc.*, 92 AD3d 424, 425; *Tri-Delta Aggregates v Goodell*, 188 AD2d 1051, 1051, *lv denied* 82 NY2d 653).

With respect to the cross appeal, we agree with defendants that the court erred in denying that part of their motion for partial summary judgment dismissing the 29th cause of action, for conversion. "[I]t is well established that a cause of action to recover damages for conversion cannot be predicated on a mere breach of contract" (*Schmidt v Lorenzo*, 70 AD3d 1362, 1362 [internal quotation marks omitted]). Because plaintiff "failed to show . . . that [T-Mobile] engaged in tortious conduct separate and apart from [its alleged] failure to fulfill its contractual obligations," the cause of action for conversion must be dismissed (*LHR, Inc.*, 88 AD3d at 1304 [internal quotation marks omitted]; *see Matzan v Eastman Kodak Co.*, 134 AD2d 863, 863-864). We therefore further modify the order accordingly.

Entered:  December 27, 2013                    Frances E. Cafarell
                                               Clerk of the Court